527 A.2d 1021

**ALLSTATE INSURANCE COMPANY**

v.

**Samuel K. CLARKE and Lebovitz & Lebovitz, P.A.**

**Appeal of Samuel K. CLARKE.**

Superior Court of Pennsylvania.

Argued Sept. 9, 1986.
Filed June 10, 1987.

Yaier Y. Lehrer, Pittsburgh, for appellant.

John M. Silvestri, Pittsburgh, for appellee.

Before BROSKY, ROWLEY and POPOVICH, JJ.

BROSKY, Judge:

This is an appeal from an order entering summary judgment in favor of Appellee-plaintiff in the amount of $4,007.00.

Appellant has raised two issues in this appeal: (1) whether a subrogee is entitled to full payment when an entire matter has not been litigated and only a portion of the claimed damage has been recovered by settlement; and (2) whether the subrogor may make payment in full less reasonable attorneys fees where the fund against which a subrogee attempts to collect has been created by the work of the attorney for the subrogee.

We have reviewed the record and briefs submitted by counsel and find that the entry of summary judgment was improper under the facts of this case. Accordingly, we vacate the order of the trial court granting summary judgment in favor of appellee.

Appellee, Allstate Insurance Company, instituted the action below seeking the sum of $4,007.00 from appellant, Samuel Clarke. Appellant had insurance coverage provided by appellee on an automobile which was damaged severely in a collision with two other vehicles. Appellee paid the value of the car to appellant who was also seeking damages in legal proceedings against the other two drivers involved in the collision. Appellant received a $100,000 settlement against one of the drivers and his insurance carrier, which represented the extent of liability coverage of the driver, and executed a joint tort-feasor release agreement releasing the driver and his carrier from any further damages. Appellee, who had previously notified appellant of its subrogation interest and after learning of the settlement, demanded repayment of the sum paid to appellant citing a subrogation provision in the insurance contract as grounds for the repayment. Appellant, through his attorneys, notified appellee that the sum in question was being held in escrow pending resolution of the action against the other driver and the City of Pittsburgh, for whom that driver was employed at the time of the collision. Appellee then filed the action which is the subject of this appeal.

Appellant, while acknowledging appellee's subrogation right, has maintained throughout this case, that appellee's interest cannot be determined until appellant has resolved all actions and claims arising out of the collision in question. Appellant has maintained this position because it is also his contention that appellee cannot recover, in subrogation, the full amount paid to appellant unless appellant in turn recovers the full amount of his claim against the alleged tort-feasors. Given this premise, appellant argues, the percentage of repayment on the subrogation claim cannot be determined until after resolution of the other claim and attempts

at subrogation now are both premature and inequitable. Both parties cite in their briefs *Associated Hospital Service of Philadelphia v. Pustilnik, infra.* in support of their position. We agree that *Pustilnik* controls the disposition of this case.

*Associated Hospital Service of Philadelphia v. Pustilnik*, 262 Pa.Super. 600, 396 A.2d 1332 (1979), (vacated on other grounds), 497 Pa. 221, 439 A.2d 1149 (1981), dealt with a similar factual pattern to the one presently before the Court. In *Pustilnik* the insured was injured when struck by a subway car operated by SEPTA and was hospitalized on three occasions. Accumulated medical bills approximated $30,000 but Pustilnik was credited with only $18,960.18 under the terms of a subscription agreement with Associated Hospital Service of Philadelphia (Blue Cross). Pustilnik claimed this amount as an element of damages in a suit against SEPTA which settled in its fifth day of trial for $235,000. Blue Cross, having previously notified the insured of its subrogation interest, notified the trial court of its claim as well. Subsequent to the settlement, a trial was held to determine the amount of Blue Cross' subrogation interest. The court accepted the credited value of $18,960.18 as a starting point but reduced the amount by 50% because it found the settlement was at less than full value of the damages suffered. The court then made further deductions for attorney's fees and litigation expenses, both parties filed appeals.

This Court found that the trial court erred in reducing Blue Cross' subrogation interest by 50% to reflect settlement at less than full value of the claim. Citing *Illinois Automobile Insurance Exchange v. Braun*, 280 Pa. 550, 124 A. 691 (1924), this Court recited the status of the law in this regard: "that when a subrogor settles instead of pressing his suit against an alleged tort-feasor to verdict, he cannot defeat a subrogee's claim by asserting that his loss exceeded the settlement recovery." This Court, after further discussion, concluded that "when a subrogor settles, he waives his right to a judicial determination of his losses, and

conclusively establishes the settlement amount as full compensation for his damages." 396 A.2d at 1338. The appellee has quoted extensively our opinion in *Pustilnik* and argued that it requires a like result here, the immediate repayment in full of the amount paid to the insured under the insurance contract. However, *Pustilnik*, while similar to this case in most regards, is different in at least one material respect. In *Pustilnik*, the settlement with SEPTA on the fifth day of trial conclusively terminated the insured's claim against potential tort-feasors for damages. In the present case, there still is to be resolved Clarke's claim against the City of Pittsburgh. To understand the distinction it is important to understand the nature of Allstate's subrogation interest.

It is well established that the action for subrogation is one based on considerations of equity and good conscience. The goal is to place the burden of the debt upon the person who should bear it. The right of subrogation may be contractually declared or founded in equity, but even if contractually declared, it is to be regarded as based upon and governed by equitable principles. *Pustilnik*, supra. It has often been said that the equitable doctrine of subrogation places the subrogee in the precise position of the one to whose rights and disabilities he is subrogated. *Michel v. City of Bethlehem*, 84 Pa.Cmwlth. 43, 478 A.2d 164 (1984); *Fell v. Johnston*, 154 Pa.Super. 470, 36 A.2d 227 (1944). Hence, when an individual who has been indemnified for a loss subsequently recovers for the same loss from a third party, equity compels that the indemnifying party be restored that which he paid the injured party; thereby placing the cost of the injury upon the party causing the harm while preventing the injured party from profiting a "double recovery" at the indemnifying party's expense. However, as the subrogee stands in the precise position of the subrogor the subrogee should be limited to recovering in subrogation the amount received by the subrogor *relative* to the claim paid by the subrogee, for equity will not

allow the subrogee's claim to be placed ahead of the subrogor's.

Application of the doctrine of subrogation is a relatively easy task when there exists only one element of damage to the insured party. If an individual suffers $5,000.00 damage to an automobile, for example, and is paid this amount pursuant to collision coverage of an insurance contract and then is later successful in recovering $5,000 in a suit for damage to the vehicle against a third party, the insurer is entitled to the $5,000 judgment. If the insured were to recover only $4,000 in a suit against the third party, the insurer would still be entitled to the $4,000. If for some reason, say a favorable valuation of the automobile, the insured were to recover $6,000 against the third party, the insurer would remain entitled to only $5,000, the excess would belong to the insured.[1] However, subrogation becomes increasingly more difficult to apply as the amount of the claim increases and encompasses many elements of damages. If, to use the same example, in a collision an insured sustains not only property damages but personal injury, his claim against the tort-feasor will likely encompass medical bills, loss of earning capacity, lost wages, pain and suffering, and various other elements of personal injury damages in addition to the property damages. If the case goes to verdict and full damages are awarded and later collected, the insurer's subrogation right would remain easily ascertainable because if the insured recovered in full the subrogee is also entitled to recover in full. However, if after damages are determined, the insured does not recover all of the damages,[2] the insurer's subrogation rights are more difficult to determine, for the insured, while likely recovering an amount in excess of that paid by the insurer for the property damage, would not have recovered, *in full*,

1. The same results would occur if the subrogee sued the third party in its own right.
2. This could be as a result of a determination of comparative negligence on the insured's part or due to limitations on the ability to collect the judgment.

against the tort-feasor, his claim for property damages or for any other element of damage.

In *Pustilnik*, Blue Cross had an equitable right to the proceeds of the insured's settlement with the third party tort-feasor to the extent that settlement reflected payment for hospital expenses incurred by the insured and paid by Blue Cross. This equitable right existed to the extent of Blue Cross' payment of medical bills on Pustilnik's behalf and, of course, could not exceed that amount. However, the right was also limited by the amount recovered by *Pustilnik* relative to this claim.[3] In *Pustilnik*, Blue Cross was awarded subrogation to the full extent of its payment, not because the recovery by Pustilnik exceeded that paid by Blue Cross, or that they had first priority to the settlement proceeds, but because Pustilnik was deemed by the law of this Commonwealth to have recovered the full extent of his damages from SEPTA, including medical expenses, as a result of settling the claim against SEPTA. Hence, as presumably Pustilnik recovered in full, Blue Cross' subrogation right rose to the full extent of its payment in Pustilnik's behalf. This is illustrated in this court's language: "when a subrogor settles, he *waives* his right to a judicial determination of his losses, and *conclusively establishes* the settlement amount as *full* compensation for his damages."[4] (emphasis added).

3. This is consistent with the concept of placing the subrogee in the precise position of the subrogor.

4. Hence, in effect, our law indicates that when an individual settles his suit he is later estopped from claiming that his damages exceeded the amount settled for. However, we feel compelled to express our concern over this position which we are equally compelled to apply. In our opinion the treatment of a settlement as conclusively establishing the value of the subrogor's damage is neither supported in reason, sound policy or equity. There can be no doubt that many claims are settled for far less than the actual value of the damages sustained. This can be attributed to many factors. For example, the liability case may be weak for a number of reasons or there may be a readily ascertainable limit on the plaintiff's ability to collect on a judgment. This is often the case when liability coverage is limited and there exists little or no other assets to satisfy a judgment. Hence, as the *Pustilnik* court stated there may be many cases in which the subrogor "will be well advised to settle for substantially less than his claim."

■ In the present case, there were two alleged tort-feasors. Clarke has already settled with one, yet there is an action pending against the City of Pittsburgh which may still go to trial. Consequently, unlike *Pustilnik* who, by settling, had "waived" his right to judicial determination of his damages, the settlement here does not have that effect. If the remaining action does go to trial, there still may be a judicial determination of the losses suffered. Only then, after collection efforts are made, will the parties be able to determine how much of Clarke's claim for property damage to his vehicle has actually been realized (encompassing the proceeds of claims against both tort-feasors). If, for whatever reason, Clarke does not collect, in full, his claim for property damage, it would be improper for Allstate to receive the full extent of its payment to Clarke. To do so would be to place Allstate's claim in damages proceeds above that of Clarke's and would require the diversion of proceeds for other elements of Clarke's damages to Allstate to the detriment of Clarke; this is contrary to the entire concept of subrogation.[5] Appellee has not brought to the

However, the fact that the subrogor settles for less than the full value of his claimed damages *does not* magically reduce the value of the damages suffered to that sum, the loss remains just as great even though the innocent and often frustrated injured party may not have a real opportunity to collect the full value of that loss. By treating the settlement value as full compensation for the loss the courts are raising the relative value of the insurer's subrogation interest and penalizing the injured insured. For instance, if the injured party's damage equals $500,000 but because of liability policy limits he can only realistically collect $100,000 and settles out of court for this sum, the current rule of law will treat the $100,000 settlement as the full value of his damages even though it is given that this does not reflect the actual loss. By operation of this presumption the insurer will now be able to collect 100% of his payment to the injured insured from these proceeds further depleting the injured party's already relatively small recovery of 20% of the value of his loss.

While a full analysis of this presumption is beyond the scope of the issue presented in this appeal, suffice it to say that upon closer scrutiny, equity is not served by engaging in a legal myth which profits an insurer at the insured's expense and could encourage a plaintiff to litigate a matter which could otherwise be settled without great difficulty.

5. To illustrate this point further consider, for example, a situation where an injured insured receives a judgment in his favor for $500,-

court's attention any authority to support placing a superior priority on the insurer-subrogee's interest as opposed to the subrogor's, nor has the court's own review found any, and this Court does not wish to create such a precedent with this case. Conversely, if the appellant here subsequently settles the action against the City of Pittsburgh, under *Pustilnik*, he will be conclusively establishing the extent of his damages at the total of both settlements and will then be estopped from claiming his loss exceeded that recovery.

 Appellant also challenges the trial court's refusal to set Allstate's recovery in subrogation at an amount representing that paid Clarke minus reasonable attorney's fees and costs. We are inclined to agree with Appellant that this constituted error. The trial court found appellant's contention to be without merit because he had not raised the claim in his pleadings. However, as the subrogation action is equitable in nature *the recovery* must be limited by equitable principles. Our Supreme Court stated in *Associated Hospital Service v. Pustilnik*, 497 Pa. 221, 439 A.2d 1149 (1981), that the insurer in that case, Blue Cross, was *"entitled to receive* under the equitable doctrine of subrogation *only* what is actually paid on appellant's behalf, less a reasonable attorney's fee and a proportionate share of costs."* It would seem, therefore, that appellant was not obliged to plead attorney's fees as a counterclaim

000 which encompasses pain and suffering, lost wages and earning capacity and medical bills. Assume further that the individual accumulated $100,000 in medical bills and that, because of effective limitations on recovery, only $100,000 is recovered from the tort feasor. Given the $100,000 recovery, logic and equity would require treating the insured as having recovered 20% of every dollar of damage suffered. Hence, the insured would have recovered only $20,000 of the $100,000 of medical bills incurred. There would be nothing equitable in awarding the entire $100,000 recovery to the medical insurer. To do so would require diversion of the insured's recovery for his loss of earnings and pain and suffering and to completely deplete the insured's recovery for damages. It would also allow the insurer to recover 100% of its expenditure while the insured only recovered 20% of his damages. Or stated alternatively, and to use an earlier analogy, if the subrogee stands in the precise position of the subrogor, the subrogor has only recovered 20% or $20,000 of his medical bills from the third party tortfeasor, consequently the subrogee can receive no more than $20,000 from the subrogor.

or setoff to appellee's claim for subrogation as equity would require that the insurer's subrogation claim be *limited* to recovery reflecting the insurer subrogee's proportionate share of the costs necessary to effectuate recovery, including attorney's fees.

We are aware that appellee expressed a desire to appellant and his attorney not to have appellant's attorney represent their subrogation interest. However, under these circumstances, we do not see how appellant could have protected himself and accomodated appellee, nor do we find that appellee was prejudiced by appellant's actions. If appellee will not join in appellant's recovery attempts or allow appellant's attorney to represent appellee's interest then appellee is effectively asking appellant to split the cause of action pursuing only damages for personal injury and thereby allowing appellee to proceed for damage to appellant's automobile. However, such a cause of action could conceivably run afoul of our rules on joinder as well as the doctrine of res judicata. Furthermore, these concerns aside, this would appear feasible only where there existed no limitations on the ability to recover. However, where, as here, there exist effective limitations on recovery, the only way appellant could have realistically preserved the subrogation rights of appellee without itself recovering the maximum amount and holding the sum for appellee, which appellant did, would be to settle the personal injury aspect of the case at an amount less than the coverage provided. But, as indicated previously, the exact sum of appellee's subrogation interest is not yet known. All that is known is that it may rise to its fullest level, in which case it would be worth the $4,007.00 claimed. We believe appellant has fully protected appellee's subrogation interest by recovering the maximum liability coverage and holding the disputed amount in escrow.

As appellee reached no agreement with appellant and his attorney regarding fees, appellee will not be bound by a set formula of compensation or by appellant's fee agreement with his attorney, but will, nevertheless, have its subroga-

tion interest subject to the deduction of a reasonable fee. See, *Associated Hospital Service v. Pustilnik, supra.* This is in accord with equitable principles as well, since surely, had the insurer sought recovery in its own behalf, it too would have incurred similar costs. To allow the subrogee to recover without deduction for reasonable costs would be to place the subrogee in a better relative position than the subrogor; again this would run contrary to equitable principles. Nor do we place much weight on the fact that Allstate told appellant's attorney not to represent their interest. As already noted, appellant's attorney recovered for appellant the maximum liability coverage provided the alleged tort-feasor. In so doing, appellant's attorney protected to the fullest extent the interests of both appellant and appellant's insurer. Indeed, it appears to us that appellant's attorney would have breached his duty to appellant had he intentionally settled the claim for a sum less than he could receive.

We do not think the insurer can create a practical conflict of interests by asserting a subrogation right to proceeds from an insured's action for damages and then refusing to grant the insured's attorney authority to represent the subrogation interest as well. Nor do we think that such refusal warrants excusal of the subrogee insurer's equitable duty to share in a proportionate share of the costs in attaining such recovery. We realize that the insured's settlement with the alleged tort-feasor, in circumstances like those here, destroys the insurer's right to bring an action in its own right. However, we do not view that as a breach of the insured's duty to protect the insurer's subrogation interest when, as here, it appears the insured has maximized recovery against the alleged tort-feasor. We note further that, to the extent there existed a conflict in the rights of the insured and insurer it arose due to the insurer's refusal to assent to appellant's attorney's joint representation of their respective interests. While we cannot compel the insurer to assent or acquiesce in appellant's choice of representation or course of recovery, we do not

feel we can condemn the insured subrogor for seeking maximum recovery from an alleged tort-feasor simply because his insurance carrier refuses to join in the recovery attempt.

For the reasons discussed above, we vacate the order granting summary judgment to appellee Allstate until such time as appellant's suit against the City of Pittsburgh is resolved, at which time appellee's subrogation interest can be determined.

Order vacated, jurisdiction relinquished.

ROWLEY, J., files a concurring and dissenting statement.

ROWLEY, Judge, concurring and dissenting:

I join in the order vacating the summary judgment entered in favor of appellee, Allstate Insurance Company, and remanding this case to the trial court for further proceedings. I also join in the holding that summary judgment at this time is premature and that a final determination of the amount due the appellee must await the resolution of appellant's claim against the city of Pittsburgh. Therefore, I join in Judge Brosky's careful and persuasive analysis of this issue.

However, I find myself in disagreement with the majority's disposition of the issue concerning counsel fees and expenses as discussed at pages 1026–1027 of their opinion. I agree that, if properly raised, the subrogee's recovery should be reduced by an amount equal to a reasonable attorney's fee for creation of the fund from which recovery is to be had. Appellant, however, did not, in his pleadings, raise any claim for such a reduction. The trial court held, therefore, that the issue was not properly before it. The majority, however, holds that "appellant was not obliged to plead attorney's fees as a counterclaim or setoff...." I respectfully dissent from that holding and agree with the trial court's conclusion.

Initially I note that, contrary to the statement of the majority, this is not an action in equity. Although equitable principles are to be considered in deciding the issue raised, the fact is that the proceedings and progress of this case through the trial court make it clear that it is a "civil action." See Pa.R.C.P. 1001, as amended December 16, 1983. Thus the rules governing pleadings are those contained in Pa.R.C.P. 1001–1048. However, even should this be considered as an action in equity (which it is not), Pa.R.C.P. 1501 provides that actions in equity are governed by the procedural rules governing "civil actions" unless specifically otherwise provided in the equity rules. My review of the equity rules discloses no provision excusing the necessity to properly plead a setoff or counterclaim merely because equitable principles are involved. In fact, Rule 1510A provides that the defendant in an equity action may plead a legal counterclaim.

Under Pennsylvania's fact-pleading procedure, each party to a lawsuit is entitled to be informed of the facts material to the original claim and defenses thereto. It is felt that such a system of pleading is necessary to enable the parties to properly prepare and present their case at the time of trial. Moreover, such a system of pleading is useful in narrowing the factual and legal issues to be resolved at trial. See II Goodrich-Amram 2d § 1017:1. Therefore, I would hold that appellant was obliged to plead the necessary facts giving rise to his claim to reasonable attorney's fees and that his failure to do so precluded the trial court from deciding that issue. However, since I agree that the judgment must be vacated and the case remanded to the trial court, my decision on this issue would be without prejudice to the right of appellant to seek permission to file an appropriate amendment to his answer and new matter upon remand. Given my conclusion that the issue of attorney's fees is not properly before us at this time, I do not join in the majority's discussion thereof contained in its opinion, pages 1026–1027.