620 A.2d 550

**Rudolph GOLDBERG, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (GIRARD PROVISION COMPANY), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 19, 1992.

Decided Jan. 11, 1993.

Richard A. Weisbord, for petitioner.

Carol S. Neitz, for respondent.

Before CRAIG, President Judge, SMITH, J., and NARICK, Senior Judge.

CRAIG, President Judge.

Claimant Rudolph Goldberg appeals an order of the Pennsylvania Workmen's Compensation Appeal Board affirming a referee's decision directing the claimant to reimburse Girard Provision Company, the insurance carrier of the claimant's employer, the amount of its subrogation lien for worker's compensation benefits the insurer had paid the claimant. The referee also ordered the claimant to pay the insurer the interest that had accrued on the disputed amount of the lien that had been held in escrow.

### Issues

Under section 319 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 671, an employer is entitled to be subrogated where the compensable injury was caused in whole or in part by a third party.

In this appeal, the claimant raises the following issues: (1) whether the referee erred by not reducing the amount of the subrogation lien by the same percentage (20%) as that which was deducted from the claimant's third-party jury award for his comparative negligence; and (2) whether the referee erred in ordering the claimant to pay the employer the interest that had accrued on the subrogation money that had been held in escrow.

### Facts

The referee made the following pertinent findings of fact:

3. Claimant's third party action was tried before the Honorable Charles A. Lord and a jury verdict was rendered in favor of Claimant and against Defendant Elliot Lewis Corporation. Thereafter, on April 13, 1989 Judge Lord entered a verdict for Claimant in the amount of $176,000.00.

4. The total jury verdict for assessed damages for Rudolph Goldberg before Judge Lord was in the amount of $220,-000.00. The jury also found Elliot Lewis Corporation 80% negligent and Rudolph Goldberg was found 20% negligent. It was on this bases that Judge Lord entered verdict for Claimant Rudolph Goldberg for 80% of 220,00.00 or 176,-000.00.

5. In reaching the $220,000 amount, the transcript of the April 10, 1989 hearing (Exhibit D-2) shows no specific allocation for wage loss, medical reimbursement, pain and suffering or any other area for which damages were sought.

6. On April 21, 1989, Claimant filed a timely Motion Requesting Damages for Delay in the third party action. That motion requested delay damages in the amount of $100,-557.65 and an entry of a total award of $276,557.65 (see Exhibit D-5).

7.  Claimant and Defendant Elliot Lewis Corporation subsequently, on May 3, 1989, agreed to settle the claims between them for the amount of $210,000.00. This "compromise settlement" did not allocate between wages, reimbursable medical damages or any other element of damages.

10.  On or about October 10, 1989, Claimant reimbursed Defendant in the sum of $37,501.84 representing the amount Claimant agreed to reimburse Defendant for its net compensation lien and and agreed to and did place in escrow the sum of $9,326.90 representing the additional amount of Defendant's net compensation lien to which Defendant claims it is entitled and which Claimant disputes. The parties agreed that Defendant's acceptance of the undisputed amount did not thereby constitute a waiver of its entitlement to the disputed amount of the net compensation lien and further agreed that in no event would the liability to Defendant or Liberty Mutual Insurance Company be greater than the disputed amount of $9,326.90 held in escrow, along with any interest earned thereon. The parties thereafter entered into a written agreement stipulating to the foregoing facts in Exhibit D–4.

### Subrogation Amount

The claimant argues that an employer's subrogation rights are governed by established equitable principles of subrogation. The claimant asserts that, as a subrogee, an employer's rights are no greater than the rights of the claimant. Thus, the claimant argues that, when a claimant's right to recovery is reduced in a third-party action because a jury finds the claimant comparatively negligent, the employer's rights should be reduced by the same percentage.

The claimant cites *Anderson v. Borough of Greenville*, 442 Pa. 11, 273 A.2d 512 (1971), in which the Supreme Court held that an employer is not subrogated to the portion of a wrongful death claim awarded to the children of the plaintiff. In that case, a widow's workmen's compensation award for her deceased husband had been augmented because of her six children. However, the employer was not subrogated to the

children's independent recovery from a tort-feasor. If the deceased had been survived only by the children and not his widow, the children would have had a right to compensation under the Workmen's Compensation Act; however, when a widow exists, the presence of children serves only to generate a larger compensation payment to the widow, and the children have no right of their own to recover compensation.

Thus, the court's decision recognized only that the widow's recovery under the Act, although increased because of the presence of children, did not render the children's recovery in *their* third-party action subject to the subrogation of the decedent's employer.

The claimant argues that, similarly, a subrogee has no rights to award amounts that relate to elements of damage that are distinct from damages for which an employer must pay workmen's compensation benefits.

In support of this statement, the claimant cites *Leach v. Meadow Gold Dairies,* 171 Pa.Superior Ct. 594, 91 A.2d 293 (1952). In *Leach,* the court held that, where an employer had not paid as part of workmen's compensation benefits an employee's funeral expenses, the employer was not entitled to be subrogated to that part of a third-party recovery if the recovery included an award for that specific expense. Thus, in determining the amount of the credit due to the employer, the court approved the deduction of the funeral expenses from the third-party recovery, and awarded the remainder to the employer.

The claimant also relies upon the Pennsylvania Superior Court's decision in *Allstate Insurance Company v. Clarke,* 364 Pa.Superior Ct. 196, 527 A.2d 1021 (1987). In that case, Allstate instituted an action seeking $4,007 from Clarke, whom Allstate had insured. Clarke was involved in an automobile accident with two other vehicles. Allstate paid Clarke the value of the car. Clarke initiated a suit against the other two drivers. Clarke received a $100,000 settlement from one of the drivers. Allstate, upon hearing of the settlement, notified Clarke of its subrogation rights and demanded repayment of the sum it had paid Clarke. Clarke notified Allstate that he

had placed the sum in question in escrow pending the outcome of his litigation with the other driver.

Clarke argued that he could not reimburse Allstate, because he could not determine Allstate's interest until the second suit was resolved. Clarke contended that Allstate could not recover the full amount it paid Clarke unless Clarke recovered the full amount of his claim against the alleged tort-feasors. Thus, Clarke argued that the percentage of repayment of Allstate's subrogation interest could not be determined until after the resolution of the second tort claim.

The court noted the significance of the fact that, in Clarke's case, all disputes with potential tort-feasors had not terminated. The claimant quotes from *Clarke* as follows:

> [I]f after damages are determined, the insured does not recover all of the damages [for example, if a jury finds the plaintiff comparatively negligent], the insurer's subrogation rights are more difficult to determine, for the insured, while likely recovering an amount in excess of that paid by the insurer for the property damage, would not have recovered, *in full,* against the tort-feasor, his claim for property damages or for any other element of damage.

364 Pa.Superior Ct. at 202–3, 527 A.2d at 1024.

■ However, the court also recognized that, when a subrogor settles a claim, he essentially waives his right to a judicial determination of his losses, and therefore conclusively establishes the settlement amount as full compensation for his damages. *See Associated Hospital Service of Philadelphia v. Pustilnik,* 262 Pa.Superior Ct. 600, 396 A.2d 1332 (1979), *vacated on other grounds,* 497 Pa. 221, 439 A.2d 1149 (1981). *Clarke* was distinguished from that situation only because one of the tort actions had not terminated. Thus, *Clarke* is factually different from this case.

The claimant argues that the failure to calculate an employer's subrogation rights to reflect an employee's comparative negligence will result in frustrating the resolution of third-party actions and ultimately will burden the judicial system.

The claimant asserts that section 319's provision that an employer is entitled to be subrogated where the compensable injury was caused in whole or in part by a third party does not constitute a departure from traditional subrogation principles. The claimant states that, although the Act clearly provides that an employer will not receive a reduction in its lien even if the employer is a joint tort-feasor, the Act does not entitle the employer to recover damages which the claimant has not been awarded.

However, reduction of the dollar amount of subrogation by another 20% would result in depriving the subrogee of part of that which the claimant has in fact recovered.

The claimant also argues that the referee and board erred in basing their decisions on the fact that they would have to engage in guesswork because the settlement does not specify the particular components that resulted in the settlement amount. However, the board and referee properly ignored the comparative negligence finding because the case was settled. When parties agree to settle a case after a jury has disposed of the dispute, there is no way for courts or, in this case, the administrative agency, to determine the basis for the settlement. Presumably, the parties settled the case, in part, to avoid an appeal. Regardless of the reasons for settlement, the fact of settlement and the settlement amount are the sole facts relevant to the question of the employer's subrogation rights. *Pustilnik.*

There is a distinction between the line of cases the claimant cites which limit a party's subrogation rights to portions of a jury award that can be allocated to different segments of damages, and this case, where an employer assumes liability for the medical payments and work-loss benefits of an employee and then seeks a reimbursement that does not penalize the employer for the employee's own negligence.

■ As the employer notes, one of the reasons the legislature adopted section 319 was to prevent claimants from receiving a double recovery for one injury. The employer points out that the claimant has received workmen's compensation bene-

fits to the full extent of the employer's statutory liability, without a reduction for the claimant's contributory negligence. Thus, because the employer could not withhold 20% in benefits, despite the claimant's contributory negligence, if the claimant were to receive the benefit of the 20% he argues should be deducted from the third-party recovery, he would be receiving a double recovery.

The employer has paid the claimant the full amount of benefits to which the claimant is entitled. In the final analysis, there is no justification for reducing the employer's subrogation amount on the basis of the claimant's own negligence, where there would be no reduction of subrogation against a non-negligent claimant.

The board did not err in concluding that the referee correctly calculated the employer's subrogation amount.

### Interest

The claimant argues that the referee erred in ordering the claimant to pay the employer the interest that had accrued on the disputed subrogation amount, which the claimant had placed in escrow, pending the outcome of the referee's decision. However, as indicated in Finding of Fact No. 10, the claimant signed a stipulation in which he agreed that, upon resolution of the dispute regarding the subrogation amount, he would pay the employer any interest that had accrued on the money held in escrow.

The claimant, relying upon this court's decision in *Warner Lambert Company v. Pennsylvania Workmen's Compensation Appeal Board (Brown)*, 133 Pa.Commonwealth Ct. 250, 575 A.2d 956 (1990), argues that the Act must specifically provide for awards of interest, and that there is no authority in the Act for an award of interest that has accrued on a disputed subrogation amount. The claimant also asserts that, without such specific authority in the Act, the referee should have regarded the stipulation as unenforceable.

In *Warner Lambert*, this court reviewed a referee's decision that included an award of interest to the employer based on the finding that

By denying the defendant's subrogation interest, the Claimant has had the use of the sum of $25,376.29 for a year and a quarter at 8% interest under average market conditions, which represents a loss of interest to the Defendant of $2,537.63.

In that decision, the court reversed the referee's award of interest on the basis that there is no authority in the Act for the assessment of interest in favor of an employer or its insurer.

The employer argues that *Warner Lambert* is distinguishable from this case because the referee here was not required to make an assessment of interest. The employer contends that the referee only directed the claimant to reimburse the employer the actual interest that had accrued on the amount held in escrow. Furthermore, the claimant agreed to pay the employer the interest that accrued on the amount held in escrow when he signed the stipulation agreement.

■ This court agrees that employers are entitled to interest in cases where a claimant contests the subrogation amount to which an employer is entitled, retains the amount in escrow, and signs an agreement that provides for the payment of interest that accrues on the disputed amount.

Accordingly, the decision of the board is affirmed.

## ORDER

NOW, January 11, 1993, the order of the Pennsylvania Workmen's Compensation Appeal Board, dated October 28, 1991, at No. A90–2257, is affirmed.