**Lois FERRETTI, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (DEPARTMENT OF PUBLIC WELFARE and Phico Insurance Company), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 9, 2000.
Decided Oct. 24, 2000.

David W. Costello, Washington, for petitioner.

Ralph J. Saunders, Jr., Pittsburgh, for respondent.

BEFORE: PELLEGRINI, Judge, FLAHERTY, Judge, McCLOSKEY, Senior Judge.

FLAHERTY, Judge.

Lois Ferretti (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) which affirmed the decision of a Workers' Compensation Judge (WCJ) that granted the suspension petition filed by the Department of Welfare, Mayview State Hospital (Employer).[1] We affirm.

The facts establish that on July 10, 1993, Claimant was injured during the course and scope of her employment when she was punched by a patient on the left side of her face while dispensing medication to the patient. Pursuant to a Notice of Compensation Payable (NCP), Employer accepted liability for the physical injuries of left temporomandibular joint syndrome, tympanic membrane rupture and cervical radiculopathy.

On August 24, 1995, Employer, through its workers' compensation carrier, filed a Suspension petition alleging that as of July 24, 1995, Claimant had sufficiently recovered from her work injury, was able to return to modified duty employment at wages equal to or greater than her pre-injury wage and that Employer had made this work available to Claimant. Claimant filed a timely answer to the petition denying the allegations and alleging that she also suffers headaches, vision problems and post traumatic stress disorder as a result of her work injury.

In support of its petition, Employer presented the testimony of Dr. Joseph Eshleman who had treated Claimant through the two year period of time after her injury. After treatment and multiple diagnostic studies in conjunction with the treatment, on July 19, 1995, Dr. Eshleman opined in a medical report that Claimant was able to perform approximately six sedentary type activities and released her for full time sedentary work with a ten pound maximum lifting and/or carrying restriction. The WCJ found Dr. Eshleman's testimony to be persuasive and credible and accepted it as fact.

Employer also provided the testimony of Gloria Bombara–Laux, a Rehabilitation Coordinator who began working with Claimant in May 1994. Ms. Bombara–Laux testifies that while Claimant was initially cooperative in returning to work, Claimant expressed concern that she would not be able to return to work until September 1995. A meeting was scheduled on July 26, 1995 to review a work assignment that incorporated the medical restrictions, but Claimant failed to appear for the meeting. Ms. Bombara–Laux stated that Claimant later informed her that she would not return to work because her physicians had not released her. The WCJ accepted this testimony as credible and as fact.

In further support of its petition, Employer offered the testimony of Margaret Jarosh, Benefits Coordinator and Personnel Analyst for Employer. Ms. Jarosh stated that she thoroughly reviewed a Work Capacity Evaluation of Dr. Eshleman and that she incorporated medically approved job responsibilities into a July 26, 1995 letter to Claimant. Through this letter Employer offered Claimant full-time modified duty work at wages higher than Claimant's pre-injury wage, to begin on

---

1. Employer's suspension petition was filed pursuant to Section 413(c) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 735, *as amended*, 77 P.S. § 774.2.

July 30, 1995. The WCJ found this testimony credible and accepted it as fact.

In opposition to Employer's suspension petition, Claimant testified that her condition did not improve since her work injury and that she was not able to return to work in any capacity. Claimant described her concerns and fears since the time she was injured by the resident. Claimant acknowledged that Dr. Eshleman had been one of her treating physicians, but she disagreed with his release to return to work in July 1995. She also acknowledged that she received the letter from Employer concerning the available modified position and her return to work.

In further support of her opposition to Employer's petition, Claimant presented the deposition testimony and report of Dr. George McCollum. Dr. McCollum first examined Claimant on July 24, 1995, after Dr. Eshleman had determined that Claimant could return to work. Dr. McCollum acknowledged that none of his office records detailed any physical findings during the course of his examinations, that neurologically Claimant had normal reflexes, strength and sensory testing, that he never confirmed her alleged vision problems and that there was no notation of any cervical spasm in the records. Dr. McCollum agreed with Dr. Eshleman's assessment of Claimant's physical capacities and further agreed from a physical standpoint that Claimant was capable of engaging in the activities set forth in the reports of Dr. Eshleman and that she was able to perform the job duties outlined in the July 24th letter.

However, Dr. McCollum testified that Claimant was unable to perform the modified duty job responsibilities due to her post traumatic stress disorder. He further acknowledged that he was not actively engaged in the practice of psychiatry or psychology and that the psychiatrist who had evaluated Claimant in September 1995 had recommended that Claimant return to work.

The WCJ concluded that Claimant was able to return to modified duty employment as of July 30, 1995 and, further, that employment within the physical capacities and limitations of Claimant had been made available to Claimant by Employer as of July 30, 1995. The WCJ granted Employer's petition for a suspension of Claimant's benefits effective July 30, 1995.

Claimant appealed the WCJ's decision to the Board. By decision dated October 7, 1999, the Board affirmed the order of the WCJ. Claimant's petition for review to this Court followed.

Claimant raises one issue for our review and that is whether the WCJ and the Board committed reversible error by failing to apply a "physical/mental" analysis in their decisions, in light of Claimant's physician's testimony that Claimant suffered from post traumatic stress disorder related to her work injury.[2]

■ Before we reach the merits of Claimant's argument, we must address Employer's assertion that Claimant waived this argument by failing to raise it before the Board. The law is well settled that issues not raised before the Board are waived and cannot be raised for the first time before this Court. *Myers v. Workers' Compensation Appeal Board (Family Heritage Restaurant),* 728 A.2d 1021 (Pa. Cmwlth.1999), petition for allowance of appeal denied, 560 Pa. 714, 743 A.2d 925 (1999). A review of the record indicates that Claimant did raise this argument before the WCJ and the Board. Thus, we cannot say that Claimant waived her argument before this Court.

Claimant essentially argues that in light of Dr. McCollum's testimony that she suffered from post traumatic stress syndrome

2. Our appellate review in workers' compensation cases is limited to determining whether findings of fact are supported by substantial evidence, whether constitutional rights were violated and whether errors of law were committed. *NGK Metals Corporation v. Workmen's Compensation Appeal Board (Bochis),* 713 A.2d 127 (Pa.Cmwlth.1998).

related to her work injury, that the WCJ and the Board should have applied a "physical/mental analysis" in determining whether Employer was entitled to a suspension of benefits. Claimant argues that Pennsylvania Courts have recognized that a physical injury suffered at work may trigger a mental response that would disable an individual and such a analysis should have been utilized in this case. Without such an analysis Claimant asserts the WCJ's and the Board's decisions are incomplete and, therefore, incorrect.

Employer argues that Claimant's argument must fail because the NCP does not reference any mental or psychological injuries, Claimant never petitioned for a modification of the NCP to include mental or psychological injuries and Claimant cannot now include them as injuries at this time and allege that Employer is responsible for any such injuries. Because the alleged mental or psychological injury has never been proved by Claimant to exist and included in the NCP, Employer argues that the WCJ and the Board did not err as a matter of law by failing to engage in a "physical/mental" analysis. Employer relies on the Pennsylvania Supreme Court's decision in *Commercial Credit Claims v. Workmen's Compensation Appeal Board (Lancaster)*, 556 Pa. 325, 728 A.2d 902 (1999) in support of its argument. After review, we must agree with Employer.

The facts in *Commercial Credit Claims* are similar to the facts in the instant case. The claimant was injured on the job while working as a claims adjuster for the employer. The employer and its insurance carrier issued a NCP voluntarily accepting liability for physical injuries described as cervical syndrome and sprained right sternoclavicular joint, and agreed to pay the claimant total disability benefits. Subsequently, the employer filed a petition to terminate the claimant's benefits alleging that he had fully recovered from his work related injury. At hearings, the claimant testified of ongoing pain. In addition, a medical doctor testified that the main component of the claimant's problem was a psychiatric problem.

The WCJ denied the employer's termination petition finding that the medical witness raised the possibility that the claimant was suffering from a psychological disability caused by the work injury. The Board and the Commonwealth Court affirmed the WCJ.

On review the Pennsylvania Supreme Court reversed this Court. The Pennsylvania Supreme Court determined that because there was no psychological injury listed in the NCP and because the NCP had never been modified to include a psychological injury, the employer was not liable for the injury nor was it the employer's burden to disprove a causal relationship between the work-related injury and a subsequently alleged psychological injury, where the NCP set forth liability only for the physical injuries suffered from the work-related accident. The Supreme Court stated that is would not "strain the humanitarian goals underlying the Workman's Compensation Act by holding that employees may remain perpetually eligible for compensation merely by alleging psychiatric injury at the eleventh hour and waiting to see whether the employer can adduce the requisite expert testimony to disprove a causal nexus." *Id.* 556 Pa. at 332, 728 A.2d at 905.

Similarly, in the instant case the NCP listed only physical injuries. There were no mental or psychological injuries listed. According to Sections 406.1 and 407 of the Act, 77 P.S. §§ 717.1 and 731, Employer was only responsible for the physical injuries listed in the NCP, as the NCP was valid and binding unless modified or set aside in a manner provided by the Act. Claimant could have contested the terms of the original NCP pursuant to Act at 71 P.S. § 751 to include a psychological injury, but the record does not reveal that a modification petition was ever filed by Claimant.

Therefore, because the NCP required Employer to compensate Claimant only to the extent that she was unable to work due to physical injuries and the NCP was never properly modified to include a psychological injury, Employer needed only to show that Claimant's physical injuries were resolved to a point where there was modified duty available to Claimant, within her physical work restrictions, and that Employer made this employment available to Claimant, in order to succeed on its suspension petition.

As noted in *Commercial Credit Claims*, this decision does not leave Claimant without recourse. Claimant may still file a petition seeking to amend the original NCP and by meeting her burden of proving that she suffered a psychological injury as a result of the work-related injury. However, Claimant cannot shift the burden, which she properly bears, to Employer by merely contesting the Employer's suspension petition and alleging a psychological injury.

Therefore, we conclude that neither the WCJ nor the Board erred when they did not apply a "mental/physical" analysis in this case, where according to the NCP Employer was not responsible for any psychological injury and where Claimant has not met her burden of proving such a psychological injury through a petition to modify the NCP to include such. Accordingly, the order of the Board is affirmed.

### *ORDER*

AND NOW, this 24th day of October, 2000, the order of the Workers' Compensation Appeal Board at No. A98–1537, dated October 7, 1999, is affirmed.