IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jaime Serrano, : 
          Petitioner :
                                          :
     v.                                   : No. 2684 C.D. 2015
                                          : Argued: December 15, 2016
Workers' Compensation Appeal              :
Board (Ametek, Inc.),                     :
          Respondent :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JULIA K. HEARTHWAY, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                          FILED: February 13, 2017

Jaime Serrano (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that modified his compensation benefits pursuant to Section 319 of the Workers' Compensation Act (Act).[1] The Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Ametek, Inc. (Employer) was entitled to subrogate against all of Claimant's recovery from a third party tortfeasor. Claimant argues that the Board erred because Employer did not prove that the fund created by his tort settlement related to all of his work injuries. We vacate and remand.

## Background

On March 6, 2006, a container of metal powders, with which Claimant was working, exploded, creating a flash fire. Claimant sustained second and third degree burns. On March 17, 2006, Employer issued a Notice of

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §671.

Compensation Payable (NCP), accepting liability for burns to Claimant's "[f]ace, chest, head, ears, hands, arms, [and] thighs." Reproduced Record at 23a (R.R. __). Pursuant to the NCP, Employer began paying Claimant total disability compensation in the amount of $372.50 weekly.

In December 2006, Claimant sued Aramark Uniform and Career Apparel, Inc. (Aramark), which had provided the flame-resistant coveralls Claimant had been wearing at the time of the accident. Claimant alleged that the coveralls did not protect him as warranted by Aramark. Two years later, Claimant settled with Aramark for $2.7 million. In August of 2008, Employer asserted a lien of $946,024.70 against Claimant's settlement for its payment of medical and disability compensation to Claimant. Deducting Employer's proportionate share of attorney's fees and costs, the net lien asserted by Employer was $620,178.30.

Disputing Employer's entitlement to the full amount of the lien asserted, Claimant filed a review petition to have the amount of Employer's subrogation rights determined; $630,000 was placed into escrow pending the outcome of litigation.[2] Employer filed a modification petition, seeking to recover alleged overpayments of disability compensation. The petitions were assigned to a WCJ.

The parties entered into a stipulation of facts. The stipulation acknowledged that Claimant was entitled to a specific loss benefit of $27,937.50 for the scarring to his neck, face and hands.[3] The stipulation acknowledged that

---

[2] The amount placed in escrow actually exceeded the amount of Employer's asserted lien of $620,178.30.

[3] Section 306(c)(22) of the Act provides a specific loss benefit for "serious and permanent disfigurement of the head, neck, or face ...." 77 P.S. §513(22). Section 306(c)(1), (9)-(16) also provides a specific loss benefit for a total or partial loss of a hand. 77 P.S. §513(1), (9)-(16).

the burns to Claimant's torso, shoulder, arms, and legs were aggravated by the defective coveralls. The stipulation stated that Claimant's work gloves melted from his hands, and the air-supplied face shield and hood melted onto his face; neither the gloves nor the hood were manufactured or supplied by Aramark.

The stipulation did not resolve the question of whether the coveralls provided by Aramark contributed to the burns to Claimant's neck, face and hands. On that question, the stipulation stated as follows:

> a. The Parties agree that Claimant's burn injuries to his torso, shoulder, arms, and legs were worsened and enhanced by the insufficient/defective coveralls provided by A[ramark], and that such injuries were made more severe than they otherwise would have been if A[ramark] had supplied sufficiently protective coveralls.
>
> b. Claimant maintains that the injuries caused by the insufficient/defective coveralls were limited to those injuries described in paragraph 13(a).
>
> c. While agreeing to the contents of paragraph 13(a), *[Employer] also maintains that the entirety of Claimant's injuries were caused and/or contributed to by the insufficient/defective coveralls*[.]

Stipulation ¶13; R.R. 26a (emphasis added). Claimant agreed that Employer was entitled to subrogation for the injuries sustained to his "torso, shoulder, arms, and legs" but disputed Employer's right to subrogation for the injuries to his hands, neck, face, head, trachea, larynx and lungs. Stipulation ¶16; R.R. 27a.[4]

The stipulation included a chart that listed each body part burned and the medical bills associated with the treatment of that particular burn. There were

---

[4] While not specifically listed in the NCP, there is no dispute that Claimant's burn injuries included his trachea, larynx and lungs.

invoices for physical therapy and surgery that related only to Claimant's hands, and invoices for a bronchoscopy that related solely to his lung injury. For the most part, however, Claimant conceded that the medical benefits paid by Employer could not be precisely prorated according to each body part injured. Because two-thirds of Claimant's burns were areas covered by the coveralls, Claimant argued that Employer was entitled to two-thirds of its asserted lien against the fund created by Claimant's settlement with Aramark.

Claimant presented the deposition testimony of Martin K. Brigham, Esq., who represented Claimant in his tort claim against Aramark. The tort complaint initially alleged that the coveralls accumulated a static electrical charge that caused the explosion. This would have made Aramark liable for all of Claimant's injuries. However, further testing contradicted this claim. Ultimately, the tort settlement was based solely on the claim that the defective coveralls failed to protect Claimant and actually intensified his burns.[5]

Brigham testified that prior to completing the settlement with Aramark, he informed Employer that Aramark had refused liability for the injuries to Claimant's neck, face, head, and hands because the coveralls did not aggravate those injuries. Likewise, Aramark refused liability for the injuries to Claimant's esophagus and lungs caused by his inhalation of hot air because the coveralls were not intended to prevent such injuries.

---

[5] The tort complaint was introduced into evidence. It alleged, *inter alia*, that Aramark was aware that the coveralls were not safe for use where there was a risk of exposure to molten metal. In such a case, the coveralls would fail to self-extinguish due to the thermal energy generated from the ignition of a metal powder dust cloud. Claimant's coveralls did not self-extinguish. They burned through Claimant's undergarments, intensifying the fire and the severity of the burns.

4

As noted, the stipulation preserved Employer's right to claim that the "entirety of Claimant's injuries" were caused by the defective coveralls. Stipulation ¶13; R.R. 26a. The stipulation also preserved Claimant's objection to that claim. Employer did not present any evidence to show that the burns to Claimant's body parts not covered by the coveralls were caused, in any way, by Aramark's negligence.

In its decision of February 7, 2012, the WCJ concluded that Employer was entitled to $610,181.59 of the escrowed funds. The WCJ held that Employer was entitled to recover all of the wage loss benefits paid to Claimant. The WCJ also held that Employer was entitled to recover the medical expenses it incurred for the injuries to Claimant's torso, arms and legs caused by Aramark's negligence. However, Employer was not entitled to recover $15,302.31 in medical expenses paid to treat Claimant's hands, neck, face, head, trachea, larynx, and lungs. Likewise, Employer was not entitled to reimbursement for the specific loss benefit of $27,937.50 for the scarring to Claimant's neck, face, and head.[6] In making this determination, the WCJ credited the testimony of Brigham that Claimant's "work-related injuries to his neck, face, head, and arms, and his inhalation injuries to his esophagus and lungs, were not caused in whole or in part by the acts or omissions of A[ramark]." WCJ Decision, 2/7/2012, Finding of Fact No. 13.

Both parties appealed to the Board. Claimant argued the WCJ erred in finding Employer was entitled to 100% of the wage loss benefits and all medical benefits paid, minus $15,302.31. Employer argued that it was error for the WCJ to

---

[6] Employer had not yet paid the specific loss benefit as of the conclusion of this litigation. Generally, specific loss benefits are not paid until total disability payments end. *Coker v. Workers' Compensation Appeal Board (Duquesne Light Company)*, 856 A.2d 257, 261 (Pa. Cmwlth. 2004).

5

deny Employer subrogation with respect to injuries Claimant sustained to his hands, face, head, trachea, larynx, and lungs, including the specific loss benefit of $27,937.50.

The Board reversed the WCJ's decision. Section 319 of the Act states that an employer is entitled to recover its expenses when a third party causes the work injury "in whole or in part." 77 P.S. §671.[7] The Board concluded that Claimant's discrete work injuries, as separately enumerated in the NCP, constituted a single compensable injury for purposes of Section 319 of the Act. Because Aramark caused some of Claimant's work injuries, the Board reasoned that Employer was entitled to recover all of its compensation expenses from the Aramark settlement. The Board remanded the matter to the WCJ to determine the amount of Employer's net lien and whether Employer was entitled to a credit for overpayment of disability benefits it had paid from August 15, 2008, through November 8, 2010, as well as future disability compensation.

On February 3, 2015, the WCJ issued a remand decision that awarded Employer $620,178.30 for reimbursement of all wage loss benefits and medical expenses paid prior to August 15, 2008, and for the specific loss benefit of $27,937.50. The WCJ modified Claimant's wage loss benefits to a rate of $128.29 per week as of August 16, 2008, because Employer had overpaid Claimant's wage loss compensation from August 16, 2008, through November 8, 2010, for a total of $28,466.74. Employer was given an additional $9,821.70 from the escrowed funds as partial reimbursement of the overpayment.[8]

---

[7] The text of Section 319 of the Act is set forth later in this opinion.

[8] Thereafter, Employer was to deduct $25 every two weeks from Claimant's wage loss benefits until it had recouped the remaining balance of the overpayment.

6

Claimant again appealed to the Board, reiterating his theory that Employer's subrogation rights were limited to compensation paid for those discrete work injuries caused by Aramark. The Board rejected Claimant's appeal, explaining "that the employer's right to subrogation under §319 is absolute" and "equitable considerations do not outweigh the mandatory language of §319." *Thompson v. Workers' Compensation Appeal Board (USF&G Co.)*, 781 A.2d 1146, 1150 (Pa. 2001).

Claimant has petitioned for this Court's review.[9] Claimant argues that the Board erred in holding that all of his enumerated work injuries constituted a single compensable injury for purposes of Section 319 of the Act. He contends that Employer's subrogation is limited to the compensation it paid to Claimant for the work injuries caused by Aramark's negligence. This excludes compensation paid as a result of the burns to Claimant's hands, neck, face and head, trachea, larynx and lungs, because Aramark did not cause those injuries, even in part.

### Section 319 of the Act

This case turns on the meaning of Section 319 of the Act, which governs subrogation rights. Precedent teaches that under Section 319, "subrogation is 'automatic,' and 'by its terms, admits no express exceptions, equitable or otherwise.'" *Young v. Workers' Compensation Appeal Board (Chubb Corporation)*, 88 A.3d 295, 302 (Pa. Cmwlth.), *petition for allowance of appeal*

---

[9] This Court's review of a workers' compensation adjudication determines whether an error of law or a constitutional violation was committed or whether the findings of fact are supported by substantial, competent evidence. *Myers v. Workers' Compensation Appeal Board (University of Pennsylvania and Alexsis, Inc.)*, 782 A.2d 1108, 1110 n.1 (Pa. Cmwlth. 2001).

*denied*, 97 A.3d 746 (Pa. 2014) (quoting *Thompson*, 781 A.2d at 1151). An employer's burden is as follows:

> To establish its right to subrogation, the employer must demonstrate that it was compelled to make payments due to the negligence of a third party and *that the fund against which the employer seeks subrogation was for the same injury for which the employer is liable under the Act.* Whether an employer is entitled "to subrogation is a question of law based upon the facts as found by the WCJ."

*Id.* (internal citations omitted). Subrogation serves several goals: (1) it prevents the claimant's double recovery for the same injury; (2) it protects the employer from incurring liability for the negligence of a third party; and (3) it prevents the third party from evading liability for his negligent conduct. *Dale Manufacturing Company v. Bressi*, 421 A.2d 653, 654 (Pa. 1980).

The issue here is the construction of the language in Section 319 of the Act, which states, in relevant part, as follows:

> *Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe*, his personal representative, his estate or his dependents, against such third party *to the extent of the compensation payable under this article by the employer*; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement.

77 P.S. §671 (emphasis added). Claimant argues that where there are multiple injuries, but the tort recovery covers only some of those injuries, subrogation is

8

likewise limited. An employer can recover only for compensation paid for work injuries caused, in part, by the third party tortfeasor. In support, Claimant directs the Court's attention to three cases, which we review *ad seriatim*.

In *Dale Manufacturing Company*, 421 A.2d 653, the first case cited by Claimant, the claimant sustained a work injury to her back that required surgery. A second surgery was needed to remove a pad that had been left behind in the first surgery. The claimant filed a medical malpractice claim that settled for $30,000, and the employer asserted subrogation rights to the settlement. This Court held that the employer was entitled to subrogation, and the Supreme Court reversed. The Supreme Court held that an employer must show that the fund against which it seeks subrogation relates to the work injury. The only evidence on the issue of whether the "forgotten cottonoid pad either aggravated the original [work] injury or caused a new and independent one" was the claimant's tort pleading. *Id*. at 655-56 (internal footnote omitted). Because the pleading was silent on the impact of the surgery upon the claimant's work injury, the Supreme Court held that the employer was not entitled to any subrogation.

Claimant next directs the Court to *Edder v. Workers' Compensation Appeal Board (Glenshaw Glass Company)*, 767 A.2d 617 (Pa. Cmwlth. 2001), where the claimant suffered a work injury to his back. The surgery to treat the claimant's back left him impotent and incontinent, which prompted a malpractice action that settled for $850,000. Because the malpractice action involved neurogenic dysfunction, it was distinct from the claimant's work-related back injury. To seek subrogation, the employer had the burden of proving:

> (1) a causal connection between the original work-related injury and the subsequent event for which a third party is liable; and (2) that as a result of the subsequent event employer was

> compelled to pay compensation benefits greater than those required by the initial injury.

*Id.* at 618. Stated otherwise, the employer had to "show he is compelled to make payments by reason of the negligence of a third party." *Id.* at 619. Because the claimant remained totally disabled by his original work injury, the surgery did not affect either the degree or duration of the claimant's work injury.

Finally, Claimant refers the Court to *Sharkey v. Workers' Compensation Appeal Board (Sharkey's American Hardware)*, 744 A.2d 345 (Pa. Cmwlth. 1999), which involved a fatal claim benefit. The claimant's husband had suffered serious work injuries and died two years later from a myocardial infarction. The claimant was awarded a fatal claim benefit after she proved that the decedent's death was a direct result of his work injury. The claimant also filed a medical malpractice action, which settled for $700,000. This Court held that the employer was not entitled to subrogation because it did not offer any evidence that the medical malpractice caused the decedent's death. We explained that to establish a right of subrogation,

> an employer must demonstrate that it is required to make payments by reason of the negligence of the third-party and the *fund to which it seeks subrogation was for the same compensable injury for which the employer is liable under the Act*.

*Id.* at 347 (emphasis added). The parties' stipulation did not establish that the malpractice "was related in some manner to the original compensable injury or the subsequent myocardial infarction." *Id.*

10

Claimant argues that this above-reviewed precedent supports his construction of Section 319, *i.e.,* that each "compensable injury" must be separately examined in a subrogation analysis.[10] It is the employer's burden to "explain the effect of the medical [malpractice] upon the original compensable injury." *Dale Manufacturing Company*, 421 A.2d at 655. Claimant argues that Employer had to relate Aramark's negligence to each of his compensable work injuries. Specifically, Employer had to establish that Aramark's negligence caused the injuries to Claimant's hands, neck, face, head, trachea, larynx, and lungs, and Employer did not make this showing.

Employer responds that Claimant's multiple injuries constituted a single "compensable injury" because they all occurred in one accident. In support of this position, Employer directs the Court to *Goldberg v. Workmen's Compensation Appeal Board (Girard Provision Company)*, 620 A.2d 550 (Pa. Cmwlth. 1993). In that case, the jury found a third party 80% liable for the claimant's injury; the claimant's contributory negligence reduced his award by 20%. The claimant argued that the employer's subrogation lien should be reduced by 20%, but this Court rejected that contention. Employer argues that *Goldberg* stands for the proposition that its subrogation rights are not affected where there is

_____

[10] Notably, a claimant is not entitled to craft a third-party settlement award in a manner that limits an employer's subrogation rights. *See Thompson v. Workers' Compensation Appeal Board (USF & G Company)*, 801 A.2d 635, at 638 (Pa. Cmwlth. 2002) (quoting *Cullen v. Pennsylvania Property and Casualty Insurance Guaranty Association*, 760 A.2d 1198, 1201 (Pa. Cmwlth. 2000) ("We have since cited *Bumbarger* [*v. Bumbarger*, 155 A.2d 216 (Pa. Super. 1959),] for the proposition that 'subrogation rights will not be affected by the way in which the claimant and third-party tortfeasor, or the fact-finder in their action, characterize the nature of the third-party recovery.'")).

11

more than one tortfeasor. Claimant responds that Employer has offered an overbroad reading of *Goldberg*. We agree.

First, *Goldberg* is factually distinguishable because it concerned a single work injury, not multiple work injuries, as in this case. Second, the effect of the claimant's contributory negligence was to reduce the settlement amount, which is the starting point for any subrogation analysis. There was no dispute in *Goldberg* that the third-party tortfeasor was "in part," *i.e.*, 80%, liable for the claimant's single work injury.

The question here is one of statutory construction. Section 319 refers to "a compensable injury." The issue is whether the subrogation analysis must be done for each "compensable injury" where there is more than one work injury for which the employer has accepted liability. Here, Aramark assumed liability for some of Claimant's work injuries, and it denied liability for others. The WCJ found, as fact, that the defective coveralls did not cause the injuries to Claimant's hands, neck, face and head, trachea, larynx, and lungs.

> As has been well established, it was Employer's burden to
>
> demonstrate that it was compelled to make payments due to the negligence of a third party and that *the fund against which the employer seeks subrogation was for the same injury* for which the employer is liable under the Act.

*Young*, 88 A.3d at 302 (emphasis added). Employer did not present any evidence to connect Aramark's negligence to the injuries Claimant sustained to his hands, neck, face and head, trachea, larynx, and lungs. Employer did not show that the fund created by Aramark was for "the same injury for which [Employer] is liable under the Act." *Id.* We conclude that the Board erred in holding that because

12

some of Claimant's work injuries were caused by Aramark's negligence, Employer could subrogate for all of its compensation payments.

This construction of Section 319 is consistent with the basic structure of the Act, which treats work injuries separately in a number of contexts. For example, when a claimant sustains work injuries, the employer may accept responsibility by filing a NCP. The employer's liability is limited to injuries listed in the NCP. *Ferretti v. Workers' Compensation Appeal Board (Department of Public Welfare)*, 761 A.2d 203, 207 (Pa. Cmwlth. 2000). The claimant who seeks to amend the NCP with additional injuries bears the burden of proof. Likewise, when an injured employee files a claim petition, he must prove that each separately claimed injury is work-related. *Ingrassia v. Workers' Compensation Appeal Board (Universal Health Services, Inc.),* 126 A.3d 394, 402 (Pa. Cmwlth. 2015). The WCJ has the authority to find that some, none, or all of the injuries are compensable. *Ausburn v. Workers' Compensation Appeal Board (Merrell & Garaguso)*, 698 A.2d 1356, 1358 (Pa. Cmwlth. 1997). Finally, when an employer seeks to terminate benefits, it must show the claimant has recovered from each of the separate work-related injuries for which the employer's liability has been established. *Gillyard v. Workers' Compensation Appeal Board (Pa. Liquor Control Board)*, 865 A.2d 991, 996 (Pa. Cmwlth. 2005).[11]

Section 319 authorizes subrogation where "the compensable injury is caused in whole or in part" by a third party. 77 P.S. §671. Nothing in Section 319

---

[11] Failure to address all of the acknowledged work-related injuries will be deemed an unreasonable contest. *Gillyard,* 865 A.2d at 996-97 (unreasonable contest found where medical expert agreed that claimant's injury was established as chronic sciatica at the L5-S1 distribution, with a bulging disc, but medical expert merely testified that claimant had recovered from a lumbar strain and sprain).

supports Employer's view that "compensable injury" means many "compensable injuries" if they are sustained in a single work accident. The legislature knows the difference between a singular and plural noun. It could have stated that if a tort settlement covers one injury out of many work injuries, the entire fund is available for subrogation. Section 319 does not so state. Employer produced no evidence to show that the injuries to Claimant's hands, neck, face, head, trachea, larynx, and lungs were caused, even "in part," by Aramark.

## Conclusion

The WCJ's decision of February 7, 2012, held that Employer was not entitled to recover the medical expenses, which the WCJ quantified as $15,302.31, that Employer incurred to treat burns not caused by Aramark. The WCJ also held that Employer was not entitled to subrogate the specific loss benefit of $27,935.50 for the scarring and disfigurement to Claimant's neck, face, and head, which were not caused by Aramark. The WCJ allowed Employer to recover all its medical expenses, with the exception of $15,302.31, and 100% of the wage loss benefits it paid.[12] Claimant appealed the WCJ's refusal to apportion Employer's subrogation rights to a percentage of the total, as suggested by Claimant. The Board did not address Claimant's appeal, and it must be addressed on remand.

---

[12] Although not clear, it appears that the WCJ reasoned that Employer would have paid the same wage loss benefits as a result of the injuries caused by Aramark's negligence.

14

For the above-stated reasons, we vacate the Board's order and remand this matter to the Board to address the issues raised by Claimant in his appeal from the February 7, 2012, decision of the WCJ.[13]

_____
MARY HANNAH LEAVITT, President Judge

---

[13] On February 1, 2017, Employer filed an application for stay seeking to delay this Court's disposition of this matter, which we deny. Because we remand this matter to the Board, the parties may pursue a compromise and release agreement upon remand.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jaime Serrano,         :
     Petitioner    :
             :
    v.        : No. 2684 C.D. 2015
             :
Workers' Compensation Appeal  :
Board (Ametek, Inc.),     :
     Respondent   :

**O R D E R**

AND NOW, this 13th day of February, 2017, the order of the Workers' Compensation Appeal Board (Board), dated December 9, 2015, is hereby VACATED and the matter is REMANDED to the Board for further proceedings in accordance with the attached opinion. The application for a stay of this Court's disposition of this matter is DENIED.

   Jurisdiction relinquished.

          _____
          MARY HANNAH LEAVITT, President Judge