631 A.2d 826

**George PAXOS, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (FRANKFORD–QUAKER GROCERY and National Union Insurance Co.), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 30, 1993.

Decided Sept. 8, 1993.

Neil Mittelman, for petitioner.

Barbara L. Young, for respondents.

Before COLINS and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

George Paxos (Claimant) petitions for review of an order of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's denial of Claimant's petition for modification of compensation and claim petition for medical expenses, and which denied Claimant's petition for a rehearing to present additional medical evidence.

Claimant suffered a back injury on November 26, 1979 while working as a truck driver for Frankford–Quaker Grocery (Employer). He received disability benefits pursuant to a notice of compensation payable dated December 10, 1979. Employer subsequently filed a petition for termination of benefits which resulted in a decision of the referee, dated April 25, 1983, awarding Claimant partial disability benefits as of October 2, 1980. Both parties appealed to the Board which affirmed the referee's decision.

On January 24, 1985, Claimant filed a petition for modification of compensation, alleging total disability as of May 17, 1983. On March 20, 1987, Claimant filed a claim petition requesting relief in the form of compelling Employer's insurance carrier to pay for Claimant's proposed medical treatment at Temple University Pain Clinic.[1]

1. Claimant testified that at the recommendation of his treating physician, Dr. Smith, he sought treatment at Temple University Pain Clinic,

At the hearings on these two matters, Claimant, in addition to his own testimony, submitted the testimony of his treating orthopedist, Dr. Randall Smith, and his treating psychologist, Dr. Leslie Sandler. In opposition, Employer submitted the orthopedic and psychiatric testimony of Dr. Leonard Klinghoffer and Dr. Wolfram Rieger, respectively.

The referee made the following findings of fact with respect to the medical testimony presented on behalf of Claimant. Dr. Smith, who began treating Claimant on May 17, 1983, diagnosed Claimant with arachnoiditis,[2] foramenal stenosis[3] and disc herniation[4] at L3–4 and L4–5. Dr. Smith opined that Claimant was totally disabled, and was a candidate for treatment at Temple University Pain Clinic. Dr. Sandler saw Claimant on four occasions and administered several psychological tests and conducted psychodiagnostic interviews and evaluations. Dr. Sandler diagnosed Claimant with cyclothymic disorder[5] based, in particular, on the results of an MMPI[6]

but never received treatment because Employer's insurance carrier (when contacted by the pain clinic) refused to agree to pay the $550 initial evaluation fee which the pain clinic required before it would perform the evaluation. (R.R. at 246a–247a.)

2. Dr. Smith defined arachnoiditis as "[i]nflammation of the arachnoid, which is the lining of the spinal cord." (R.R. at 564a.)

3. Dr. Smith defined foramenal stenosis as narrowing of the canal through which the nerves exit from the major spinal canal. (R.R. at 564a.)

4. A herniated disc is a protrusion of a degenerated or fragmented intervertebral disk into the intervertebral foramen compressing the nerve root or into the spinal canal compressing the cauda equina in the lumbar region and the spinal cord at higher levels. *Stedman's Medical Dictionary* 455 (25th ed. 1990).

5. Dr. Sandler defined cyclothymic disorder as "[a] chronic mood disturbance of at least two years duration involving periods of depression and hypomania ... [H]ypomania is being manic but not of sufficient severity and duration to meet the criteria for a major depressive or manic episode. These depressive periods and hypomanic periods ... may be separated by periods of normal moods lasting as long as several months at a time. In other cases, the two types of periods are intermixed or alternate." (R.R. at 446a.)

6. MMPI is an abbreviation for the Minnesota multiphasic personality inventory test, which Dr. Sandler described as a widely used psychological test in the form of a 566–item true or false questionnaire which

test. Dr. Sandler opined that Claimant was unable, as a result of his condition, to perform any gainful occupation.

Regarding Employer's medical witnesses, the referee made the following findings. Dr. Klinghoffer examined Claimant on two occasions and reviewed Claimant's medical records. Dr. Klinghoffer testified that Claimant had a combination of problems, including residuals from two low back operations, degenerative arthritis associated with disc narrowing and electrodiagnostic evidence of peripheral neuropathies.[7] He further testified that Claimant had suffered degenerative arthritis prior to his injury of November 1979. Dr. Klinghoffer opined that Claimant was disabled from performing physical work that requires significant bending, repeated lifting or prolonged periods of standing, but from an orthopedic standpoint, he should be able to perform any type of very light, general work or sedentary work. Dr. Rieger performed a comprehensive psychiatric examination of Claimant and testified that Claimant has underlying dependant and passive-aggressive personality traits, but does not suffer from a true psychiatric illness. Dr. Rieger further opined that it was debatable whether Claimant's condition deserved the label cyclothymic disorder. Finally, Dr. Rieger opined that Claimant was motivated by a desire for secondary gain.

The referee accepted the testimony of Employer's medical witnesses over that of Claimant's medical witnesses. In his decision dated December 20, 1990, the referee concluded that Claimant had not met his burden of proof in the modification petition and claim petition.

Claimant appealed to the Board, arguing that the referee's findings were unsupported by substantial evidence. Claimant also filed a petition for rehearing to introduce additional medical evidence. By order dated December 1, 1992, the

gives a series of findings showing levels of normality and abnormality in ten basic psychological areas. (R.R. at 443a.)

7. Neuropathy is a classical term for any disorder affecting any segment of the nervous system. In contemporary usage, neuropathy refers to a disease involving the cranial or spinal nerves. *Stedman's Medical Dictionary* 1048 (25th ed. 1990).

Board affirmed the referee's decision and denied a rehearing. Claimant now appeals to this court, again arguing that the referee's decision was unsupported by substantial evidence, and also that the Board abused its discretion in denying a rehearing.

We note that when two separate petitions are before the referee, they must be disposed of individually. *Wetterau, Inc. v. Workmen's Compensation Appeal Board (Mihaljevich),* 148 Pa.Commonwealth Ct. 55, 609 A.2d 858 (1992). Therefore, with respect to Claimant's substantial evidence argument, the modification petition and claim petition will be reviewed separately below.[8]

■ A party seeking to modify an award or agreement for workers' compensation must produce competent evidence of a change in the worker's physical condition occurring since the date of the award or agreement. *J & L Steel Corp. v. Workmen's Compensation Appeal Board (Shutak),* 145 Pa.Commonwealth Ct. 99, 602 A.2d 467 (1992), *appeal denied,* 530 Pa. 657, 608 A.2d 32 (1992), *appeal denied,* 530 Pa. 662, 609 A.2d 169 (1992). The party seeking modification has the burden of proof. *Id.*

■ In support of his modification petition, Claimant submitted his own testimony and that of his treating orthopedist and psychologist. Claimant argues that this testimony was sufficient to prove that his condition had changed to total disability. The referee, however, relied on the testimony of Employer's medical witnesses in concluding that Claimant had not met his burden of proof. Questions of witness credibility are within the exclusive province of the referee who may, in exercise of discretion, accept or reject witnesses' testimony, in whole or in part. *Beres v. Workmen's Compensation Appeal Board (Lawson's Convenience Store),* 140 Pa.Commonwealth

8. Our scope of review is limited to determining whether an error of law was committed or constitutional rights were violated, and whether all necessary findings of fact are supported by substantial evidence. *Pettigrew v. Workmen's Compensation Appeal Board (Yarway Co.),* 139 Pa.Commonwealth Ct. 488, 590 A.2d 1364 (1991), *appeal denied,* 529 Pa. 654, 602 A.2d 863 (1991).

Ct. 497, 593 A.2d 939 (1991), *appeal denied,* 529 Pa. 624, 600 A.2d 539 (1991).

Substantial evidence is that which constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Gamble v. Workmen's Compensation Appeal Board (Burrell Constr. and Supply Co.),* 143 Pa.Commonwealth Ct. 277, 598 A.2d 1071 (1991). Our review of the record reveals that the testimony of Employer's medical witnesses was substantial evidence supporting the referee's conclusion that Claimant had not met his burden of proof in the modification petition.

Turning to Claimant's claim petition, we note that the form of the petition is not controlling where the facts warrant relief, and if a claimant is entitled to relief under any section of The Pennsylvania Workmen's Compensation Act [9] (Act), his petition will be considered as filed under that section. *Pittsburgh Press Co. v. Workmen's Compensation Appeal Board (Pecora),* 82 Pa.Commonwealth Ct. 538, 475 A.2d 972 (1984). Though designated "claim petition," the only relief requested therein was as follows:

> My physicians have recommended that I be evaluated and/or treated at the Temple University Pain Clinic, where I was accepted in May, 1986. The insurance carrier refuses to pay for the Pain Clinic or the pain Medication which I need because I cannot afford the Pain Clinic.

(Claim Petition dated March 13, 1987.)

This court, in a similar case, characterized a petition requesting this type of relief as a pre-authorization petition. *See Tobias v. Workmen's Compensation Appeal Board (Nature's Way Nursery, Inc.),* 141 Pa.Commonwealth Ct. 438, 595 A.2d 781 (1991), *appeal denied,* 529 Pa. 628, 600 A.2d 543 (1991). Such petitions are unusual because employers are required to pay all medical expenses unless and until they are found to be unnecessary or unreasonable, *Fuhrman v. Workmen's Compensation Appeal Board (Clemens Supermarket),*

9. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.

100 Pa.Commonwealth Ct. 577, 515 A.2d 331 (1986), *petition for allowance of appeal dismissed as having been improvidently granted,* 518 Pa. 59, 540 A.2d 267 (1988), and such determinations usually result from petitions to review a claimant's medical treatment or costs already incurred for treatment, filed by employers under Section 306(f)(2)(ii) of the Act, 77 P.S. § 531(2)(ii). In petitions seeking relief in the form of pre-authorization of medical expenses, the employer has the burden of proving that the proposed expenses are unnecessary or unreasonable. *Tobias,* 141 Pa.Commonwealth Ct. at 447, 595 A.2d at 785.

The referee, in his decision, referred to the claim petition as a "Petition to Review for the allowance of further medical benefits," and concluded that Claimant had not sustained his burden of proof. It is unclear exactly what burden of proof the referee was referring to, but as discussed above, Employer had the burden of proving that the proposed expenses were unnecessary or unreasonable.

■ When the burden of proof is allocated properly, there is nothing in the record to support the referee's decision. To begin with, the referee's only finding of fact pertaining to Claimant's proposed treatment at the pain clinic was as follows:

7(e). Dr. Smith further stated that Claimant was totally disabled, and was a candidate for treatment at the Temple University Hospital Pain Clinic for his unremitting pain.

More significantly, the only testimony offered on behalf of Employer on the issue of Claimant's proposed treatment was that of Dr. Klinghoffer, who testified on cross-examination, in pertinent part, as follows:

Q. Doctor, do you believe that [Claimant] is a fit candidate for referral to the Temple Pain Clinic?

A. Yes. I believe he might benefit from such an experience.

Q. What would the advantage and benefit be to a person like him to go to the Temple Pain Clinic?

A. It would depend on what they found and what they would decided to do. He might derive no benefit from it.

The Temple Pain Clinic is just like any other multidisciplinary facility. It would provide the ability to have multiple consultants from various branches of medicine, see this patient and put their heads together and offer some opinion about the management of this man as a total picture. They might come up with some answer, maybe some guidance, a program to place him upon, or they might come up—after such an experience and evaluation, they might come up the opinion that there's nothing to do, let's leave him alone. But the idea really is to put a bunch of specialist [sic] together and have them sit down and talk about their evaluations of the patient and come up with a multidisciplinary approach.

(R.R. at 229a–230a.)

Upon review of the entire record, we find no substantial evidence to support the referee's denial of Claimant's claim petition. Accordingly, we will reverse the order of the Board affirming the referee's denial of the claim petition.

Finally, Claimant argues that the Board abused its discretion in denying a rehearing to introduce evidence consisting of the CAT [10] scan report dated May 17, 1990 and the report of Dr. Smith dated June 25, 1990.[11] These reports, Claimant maintains, "constituted new evidence that Claimant had become totally disabled after the record had been closed." (Appellant's Brief at 25.)

The grant or denial of a rehearing is left to the discretion of the Board and this court will not disturb that decision absent a clear abuse of discretion. *Monaci v. Workmen's Compensation Appeal Board (Ward Trucking),* 116 Pa.Commonwealth Ct. 172, 541 A.2d 60 (1988). In deciding whether or not to grant a rehearing based on after-discovered evidence, the Board has broad powers to grant a rehearing

10. Computerized Axial Tomography.

11. The CAT scan report dated May 17, 1990, is a letter to Dr. Smith from Northeast Diagnostic Center stating the results of a computed tomography scan performed on Claimant. (R.R. at 594a.) The report of Dr. Smith dated June 25, 1990, is a letter by Dr. Smith to American International Adjustment Co. regarding his examination and treatment of Claimant. (R.R. at 595a.)

when justice requires. *Cudo v. Hallstead Foundry, Inc.,* 517 Pa. 553, 539 A.2d 792 (1988).

■ Dr. Smith's report dated June 25, 1990 is based on his examination and treatment of Claimant in connection with Claimant's hospitalization for severe back pain, including the CAT scan report dated May 17, 1990. (R.R. at 595a.) Dr. Smith states in his report that "recent tests have shown significant degenerative disease and disc pathology;" that he is pessimistic about any significant change in Claimant's condition; that the treatment administered during Claimant's recent hospitalization provided only temporary relief; and that "[a]t this point, all we can do is give [Claimant] medications, bracing, physical therapy, local modalities and, possibly, Cortisone injections." *Id.* We reject Claimant's contention that these reports "constituted unequivocal medical evidence that Claimant was totally disabled as of May and June 1990." Rather, the proposed after-discovered evidence reiterates Dr. Smith's prior testimony of record as to Claimant's condition.

■ The purpose of granting rehearing in workmen's compensation cases is to allow a party to present newly-discovered, noncumulative evidence, and will not be granted to permit the party to strengthen weak proofs already presented. *Pasquarelli v. Workmen's Compensation Appeal Board (Western Elec.),* 130 Pa.Commonwealth Ct. 228, 567 A.2d 792 (1989). Thus, a rehearing petition may be denied where the proposed after-discovered evidence is cumulative. *See Crankshaw v. Workmen's Compensation Appeal Board (County of Allegheny),* 120 Pa.Commonwealth Ct. 148, 548 A.2d 368 (1988), *appeal denied,* 523 Pa. 633, 564 A.2d 1261 (1989).[12] The Board did not abuse its discretion in denying a rehearing.

## ORDER

AND NOW, this 8th day of September, 1993, it is ordered as follows:

12. In *Crankshaw,* the claimant petitioned for a rehearing to present after-discovered evidence consisting of the testimony of a doctor who first examined the claimant after the hearing before the referee on the matter. Because the proposed testimony merely reiterated conclusions of the claimant's medical witness who testified at the prior hearing, this

1. The order of the Workmen's Compensation Appeal Board, dated December 1, 1992, affirming the referee's denial of Claimant's modification petition and denying Claimant's petition for rehearing is affirmed.

2. The order of the Workmen's Compensation Appeal Board, dated December 1, 1992, affirming the referee's denial of Claimant's claim petition is reversed, and the matter is remanded to the Workmen's Compensation Appeal Board with directions to remand to the referee for a determination of the claim petition for the expenses of the pain clinic evaluation and treatment, consistent with this opinion.

Jurisdiction relinquished.

court held that the Board did not abuse its discretion in denying a rehearing. *Crankshaw v. Workmen's Compensation Appeal Board (County of Allegheny)*, 120 Pa.Commonwealth Ct. 148, 548 A.2d 368 (1988), *appeal denied*, 523 Pa. 633, 564 A.2d 1261 (1989).