Ernest STITCHICK, Petitioner,

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (TRUMBULL COR-
PORATION), Respondent.

Ernest A. Stitchick, Petitioner,

v.

Workers' Compensation Appeal Board
(Trumbull Corporation),
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 26, 2001.

Decided Aug. 24, 2001.

Alexander J. Pentecost, Pittsburgh, for petitioner.

Charles G. Brown, Pittsburgh, for respondent.

Before DOYLE, President Judge, SMITH, Judge, and FLAHERTY, Senior Judge.

FLAHERTY, Senior Judge.

Ernest Stitchick (Claimant) petitions for review of a decision of the Workers' Compensation Appeal Board (Board) which denied Claimant's request for a remand to the Workers' Compensation Judge (WCJ) to present after-discovered evidence and affirmed the WCJ's grant of Claimant's claim petition for a closed period of disability. We reverse and remand with instruc-

tions that the requested hearing be granted.

Claimant was employed by Trumbull Corporation (Employer) as a laborer. Claimant alleged a work injury on May 1, 1997, when Claimant fell on loose gravel in the parking area while carrying pipe, injuring both elbows, knees and his left shoulder. Claimant alleged that he incurred disability from May 31, 1997 and continuing. Claimant filed a second claim petition alleging a May 29, 1997 work injury that occurred when he fell while walking down a slope on a job site and injured his right knee, head, shoulder and elbows. Claimant alleged that he incurred disability from May 31, 1997 and continuing. Employer denied Claimant's allegations.

Claimant testified on his own behalf that he fell on May 1 and 29, 1997 and received injuries to his elbows, knees, and shoulder, that he was offered light-duty work from his superintendent after the May 1 fall, that he did return to work, that his shoulder, elbow and knee are painful and that he does not feel that he can perform light-duty work.

Claimant also presented the deposition testimony of Dr. Anthony C. Canterna, M.D. (Dr. Canterna), an orthopedic surgeon. Dr. Canterna had previously treated Claimant and performed a total knee replacement in October of 1995. Dr. Canterna saw the Claimant after the first injury on June 5, 1997, and opined that Claimant had "some loosening on the patellar component" of the knee and that regarding his elbow, "he had a common extensor tendinitis, which was now becoming a chronic problem and a capsulitis on the shoulder." Deposition of Dr. Canterna, January 12, 1998 at 9–10.

Dr. Canterna was deposed again and testified that on March 13, 1998 he performed a common extensor tendon release on Claimant's left elbow. Dr. Canterna followed up on June 15, 1998 with arthroscopic surgery to Claimant's shoulder and opined that eventually Claimant would need a new shoulder, that Claimant's diagnosis has not changed "other than the fact that he has got some shoulder problems now, and he's got the elbow that is resolving quite nicely. And he has got the knee problems." Deposition of Dr. Canterna, November 2, 1998 at 14–15. Dr. Canterna further opined that Claimant is not capable of returning to his full-duty pre-injury position, that Claimant could return to light-duty work with the following restrictions: no overhead work, no lifting of anything over five pounds from table to shoulder, no climbing of stairs on a regular basis, no walking on a regular basis or for long term, no sitting in one position for more than twenty minutes and no driving any distance more than a half hour or twenty minutes.

Employer presented the testimony of Adam Belasik (Belasik), senior project manager for Employer. Belasik testified that Claimant reported the injury of May 1, 1997 and continued to work until May 5, 1997. On May 5, 1997, Belasik sent Claimant to Employer's physician and afterwards Claimant was put on light-duty work. Belasik stated that Claimant performed light-duty work up to and including the date of his second injury, May 29, 1997, that Claimant filed a second injury report on May 29, 1997 and did not return to work after that date. Belasik stated that light-duty work was, and is, currently available for Claimant including a desk job in an office.

Next, Employer presented the deposition testimony of Dr. Anthony N. Ricci, M.D. (Dr. Ricci), board-eligible in physical medicine and rehabilitation who testified that he examined Claimant on January 14, 1998, and opined that:

[T]he patient sustained work-related injuries of right knee contusion, left lateral epicondylitis, and left rotator cuff tendinitis on May 1, 1997. The patient also suffered the same injuries on May 29, 1997, during his second work-related injury. It's my opinion the patient has achieved full medical recovery from these work-related injuries.

Deposition of Dr. Anthony N. Ricci (Dr. Ricci Deposition), April 3, 1998, at 22–23. Dr. Ricci stated further that Claimant was capable of returning to his pre-injury position full time under a restriction of light-duty work with a lifting maximum of twenty pounds based upon the fact that the patient had undergone a right total knee replacement in the past.

Dr. Ricci was deposed again and testified to the same work-related injuries. He felt Claimant had no problems with the left elbow or right knee but did have discomfort at the left AC joint and a positive cross chest maneuver indicating significant and painful degeneration of the AC joint of the shoulder. He did not believe that the alleged work injuries of May 1, 1997, and May 29, 1997, in any way were the cause or the contributing factor to the positive findings. Deposition of Dr. Ricci, January 13, 1999, at 9–10. Dr. Ricci further opined that Claimant had "fully recovered from the right knee contusion, the left lateral epicondylitis, and the left rotator cuff tendinitis" but that he would restrict Claimant from "carrying large amounts of weight and walking on uneven surfaces because of the pre-existing prosthetic right knee." Deposition of Dr. Ricci, January 13, 1999, at 17.

The WCJ concluded that Claimant sustained an injury to his right knee on both May 1 and 29, 1997 and to his elbow and shoulder on May 1, 1997. The WCJ found claimant disabled from March 13, 1998 through August 23, 1998 due to his left elbow and shoulder injuries but that Claimant did not prove he was disabled from the May 1, 1997 injury or the May 29, 1997 injury during any other periods of time. The WCJ ordered Employer to pay wage loss benefits from March 13, 1998 through August 23, 1998, less a credit of $200.00 per week for the partial disability benefits paid in the previous commutation award and statutory interest on the net accrued compensation benefits at the rate of 10% per year less a deduction of 20% attorney's fees. Claimant appealed to the Board.

The Board found that the testimony supported the WCJ's finding that Claimant was capable of performing light duty work which was always available for Claimant and concluded no error of law was committed. The Claimant also petitioned the Board for a rehearing in the nature of a remand based upon after-discovered evidence. The Board declined to grant Claimant's petition. Claimant appeals to this Court.

Claimant asserts that the WCJ and the Board erred in finding that Claimant did not suffer a disability as a result of the May 1 and 29, 1997 injuries to his right knee and that the Board abused its discretion in denying Claimant's petition for remand based upon after-discovered evidence.

We will address the issue of after-discovered evidence first, as the result makes the other issue moot. The Claimant contends that the Board abused its discretion in not remanding the case due to after-discovered evidence. The Board determined as follows:

Both parties litigated the condition of Claimant's right knee. The significance of the plastic particles in the aspirant and the lucency found in the x-rays were discussed. The Judge found the testimony of Claimant's medical expert not

credible regarding the crack in the prosthetic device. The Judge instead relied on the testimony of Defendant's medical expert. The proposed testimony of Claimant's medical expert would be cumulative and bolster testimony which has already been presented and found not credible.

Board Decision at 9. This statement is in error. The WCJ does not make any findings regarding a "crack in the prosthetic device". The WCJ only states that the finding of plastic particles in the fluid aspirated from the right knee did not establish that Claimant sustained damage to his right knee prosthesis.

Claimant asserts that the after-discovered evidence proves that there was damage to his right knee prosthesis. Claimant underwent an "arthrotomy of the right knee with degenerative changes and debridement of the joint space and reinsertion of tibial insert along with patella" on August 11, 1999. Claimant wishes to introduce as evidence discovered after the close of the WCJ's record on April 12, 1999 the operative report of Dr. Canterna dated August 11, 1999 which indicates that a crack was discovered on the lateral tibular insert only after the prosthetic insert in the right knee was surgically removed and inspected. Claimant also wishes to introduce Dr. Canterna's narrative report dated October 20, 1999, which contains Dr. Canterna's explanation of the significance of the crack which was not in Claimant's possession or available until after October 20, 1999 and, consequently, is not in the record which was closed on April 12, 1999.

■ In a workers' compensation case, the decision to grant or deny rehearing is within the discretion of the Board and we will reverse that decision only for an abuse of that discretion. *UGI Corp. v. Workmen's Compensation Appeal Board (Wagner)*, 130 Pa.Cmwlth. 42, 566 A.2d 1264

(1989). A rehearing is not to be permitted solely for the purpose of strengthening weak proofs which have already been presented or for the purpose of hearing testimony which would be cumulative. *Paxos v. Workmen's Compensation Appeal Board (Frankford–Quaker Grocery)*, 158 Pa.Cmwlth. 355, 631 A.2d 826 (1993).

■ The after-discovered evidence Claimant wishes to offer is material and would not be cumulative as the WCJ did not have evidence of any actual damage to the Claimant's right knee prosthesis at the time of the first hearing. The new medical information was not readily ascertainable by the x-rays and other tests previously performed on Claimant on April 12, 1999 when the record was closed by the WCJ or on June 1, 1999 when the WCJ issued the opinion because the evidence was not ascertained or in the possession of Claimant until August 11, 1999, at the earliest, when the operation took place or, until October 20, 1999, the date of the narrative report. The Board should have granted Claimant a remand to present this new medical evidence for consideration by the WCJ. *See Puhl v. Workers' Compensation Appeal Board (Sharon Steel Corp.)*, 724 A.2d 997 (Pa.Cmwlth.1999).

In *Cudo v. Hallstead Foundry, Inc.*, 517 Pa. 553, 539 A.2d 792 (1988), our Supreme Court concluded that the Board has broad power to grant a rehearing when justice requires in order to effectuate the humanitarian purposes of the Act; it then applied this standard to permit a claimant to present additional medical evidence that would have been available to the claimant through the exercise of due diligence.

In the present controversy, the interests of justice necessitate that the Board remand this case. In refusing to remand Claimant's case, the Board clearly failed to administer its authority to grant a rehear-

ing liberally in favor of Claimant's interest, thus, abusing its discretion. Accordingly, we reverse the decision of the Board and remand with instructions that the requested hearing be granted. In addition, we vacate the Board's order with respect to Claimant's claim petition pending the holding of a rehearing on remand.

### ORDER

AND NOW, this 24th day of August, 2001, the order of the Workers' Compensation Appeal Board (Board) in the above-captioned matter is hereby vacated to the extent that it affirms the decision of the Workers' Compensation Judge (WCJ) to deny the claim petition filed by Ernest A. Stitchick (Stitchick). The Board's order is reversed to the extent that it denies Stitchick's petition for remand, and the case is remanded to the Board with instructions that a hearing be held before the WCJ to consider the after-discovered medical evidence described in this opinion.

Jurisdiction relinquished.