IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Naftale Green,                          :
                    Petitioner          :
                                        :
          v.                            :
                                        :
Workers' Compensation Appeal            :
Board (The Salvation Army),             :    No. 1259 C.D. 2018
                    Respondent          :    Submitted: March 29, 2019


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON            FILED:  July 23, 2019


          Naftale Green (Claimant) petitions for review of the August 16, 2018
order of the Workers' Compensation Appeal Board (Board) affirming the decision
and order of Workers' Compensation Judge Patricia Bachman (WCJ) that (1)
granted the Petition to Terminate Compensation Benefits (Termination Petition)
filed by The Salvation Army (Employer) against Claimant pursuant to the Workers'
Compensation Act (Act),[1] (2) granted a Petition to Review (Review Petition) filed
by Claimant pursuant to the Act, and (3) denied two Petitions to Review Utilization
Review Determinations (UR Review Petitions) filed by Claimant under the Act.  We
affirm.

_____
[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

On January 15, 2016, while working as a truck driver for Employer, Claimant fell from the back of a truck, injuring both ankles and his lower back. WCJ Decision dated August 4, 2017 (WCJ Decision), Reproduced Record (R.R.) at 173a-90a, Findings of Fact (F.F.) 1. On February 2, 2016, Employer issued a Notice of Temporary Compensation Payable that acknowledged as compensable Claimant's right ankle fracture and left ankle strain.[2] F.F. 1; *see also* Notice of Temporary Compensation Payable, R.R. at 1a-2a.

On June 23, 2016, Employer filed the Termination Petition alleging Claimant had fully recovered from his work injuries as of May 24, 2016. Board Opinion dated August 16, 2018 (Board Opinion) at 1; F.F. 2. On August 1, 2016, Claimant filed a UR Review Petition regarding the treatment of his chiropractor, Thomas Fagan, D.C. Board Opinion at 1; F.F. 2. On August 31, 2016, Claimant filed the Review Petition, seeking expansion of the description of his work injury to include a lower back injury. Board Opinion at 1; F.F. 2. Additionally, on December 12, 2016, Claimant filed a second UR Review Petition regarding treatment rendered by his medical doctor, Michael McCoy, M.D. Board Opinion at 1; F.F. 2.

After consolidating the petitions and conducting a hearing on the matter on March 16, 2017, the WCJ decided the Termination, Review, and UR Review Petitions by decision issued on August 4, 2017. *See* WCJ Decision. In the WCJ Decision, the WCJ found Employer met its burdens of proving (1) that Claimant had fully recovered from his entire work injury as of May 24, 2016, and (2) that the medical treatment rendered by Claimant's chiropractor and medical doctor were both unnecessary and unreasonable. WCJ Decision at 8; Board Opinion at 1-2.

---

[2] The Notice of Temporary Compensation Payable was later converted to a Notice of Compensation Payable.

2

Accordingly, the WCJ granted the Termination Petition and denied both of the UR Review Petitions. WCJ Decision at 8; Board Opinion at 1-2.[3] Claimant appealed the WCJ's rulings, and the Board affirmed by opinion dated August 16, 2018. *See generally* Board Opinion, R.R. at 191a-200a. Claimant timely petitioned this Court for review.[4]

Claimant makes three claims on appeal. First, Claimant alleges that the Board erred in affirming the WCJ's grant of the Termination Petition because Employer's medical expert did not provide an adequate medical opinion that Claimant had fully recovered from his work injury. *See* Claimant's Brief at 6 & 11-12. Next, Claimant alleges the Board erred by affirming the WCJ's denial of the UR Review Petitions. *See* Claimant's Brief at 6 & 15-16. Additionally, Claimant argues this Court should remand the matter to allow Claimant to enter, and the WCJ to consider, evidence of a surgery Claimant underwent following the close of the record in this matter. *See* Claimant's Brief at 6 & 13-14.

---

[3] The WCJ granted the Review Petition by agreement of the parties. *See* WCJ Decision at 9; Board Opinion at 1. No party challenges this determination on appeal.

[4] In workers' compensation appeals, this Court's "scope of review is limited to determining whether constitutional rights have been violated, whether an error of law was committed and whether necessary findings of fact are supported by substantial evidence." *Morocho v. Workers' Comp. Appeal Bd. (Home Equity Renovations, Inc.)*, 167 A.3d 855, 858 n.4 (Pa. Cmwlth. 2017) (citing *Johnson v. Workmen's Comp. Appeal Bd. (Dubois Courier Express)*, 631 A.2d 693 (Pa. Cmwlth. 1993)).

> Substantial evidence is such relevant evidence a reasonable person might find sufficient to support the WCJ's findings. In determining whether a finding of fact is supported by substantial evidence, this Court must consider the evidence as a whole, view the evidence in a light most favorable to the party who prevailed before the WCJ, and draw all reasonable inferences which are deducible from the evidence in favor of the prevailing party.

*Frog, Switch & Mfg. Co. v. Workers' Comp. Appeal Bd. (Johnson)*, 106 A.3d 202, 206 (Pa. Cmwlth. 2014) (internal quotations and citations omitted).

3

## The Termination Petition

Claimant first claims the Board erred by affirming the WCJ's grant of the Termination Petition. *See* Claimant's Brief at 11-12. Claimant argues that the testimony of Employer's expert medical witness, in which the expert gave his diagnoses of Claimant's right foot injury as "resolved contusion, sprain, avulsion versus osteophyte[,]" "did not provide clear evidence that [] Claimant's *work-related right foot fracture healed*." Claimant's Brief at 12 (emphasis in original). Therefore, Claimant concludes, "the [WCJ's] reliance upon [Employer's medical expert's] testimony for finding full recovery is inadequate as a matter of law." *Id.* We disagree.

As this Court has explained:

> In a termination proceeding, the employer bears the burden of proving that a work-related disability has ceased. This burden can be met by presenting unequivocal and competent medical evidence of a claimant's full recovery from a work-related injury.[5] A determination of whether medical testimony is equivocal is a conclusion of law fully reviewable by this Court. Credibility of witnesses, however, is for the [WCJ] to evaluate and he or she may accept the testimony of one witness over that of another.

*Koszowski v. Workmen's Comp. Appeal Bd. (Greyhound Lines, Inc.)*, 595 A.2d 697, 699 (Pa. Cmwlth. 1991) (internal citations omitted). Additionally, "[t]he [Notice of Compensation Payable] establishes the description of the work injury and the employer must establish full recovery from the injury or injuries listed there."

---

[5] "Medical evidence is considered unequivocal if the medical expert, after providing a foundation, testifies that in his medical opinion, he thinks the facts exist." *Craftsmen v. Workers' Comp. Appeal Bd. (Krouchick)*, 809 A.2d 434, 439 (Pa. Cmwlth. 2002).

4

*Harrison v. Workers' Comp. Appeal Bd. (Auto Truck Transp. Corp.)*, 78 A.3d 699, 703 (Pa. Cmwlth. 2013); *see also Serrano v. Workers' Comp. Appeal Bd. (Ametek, Inc.)*, 154 A.3d 445, 453 (Pa. Cmwlth. 2017) ("[W]hen an employer seeks to terminate benefits, it must show the claimant has recovered from each of the separate work-related injuries for which the employer's liability has been established.").

Here, in support of the Termination Petition, Employer presented the testimony of Ira Sachs, D.O. *See* F.F. 3. Dr. Sachs, a board-certified orthopedic surgeon, testified that he examined Claimant on May 24, 2016, at which time Claimant complained of right knee and hip pain, but had no complaints relative to his right ankle. *Id.* Dr. Sachs explained that, despite subjective complaints of considerable pain and wearing a walker boot on his left foot upon his arrival at the examination, during the examination Claimant walked normally without any limp, was able to stand on his heels and toes, and demonstrated excellent motor strength in both feet and ankles. *Id.* Dr. Sachs noted Claimant's lumbar examination was completely normal. *Id.* Regarding Claimant's ankles and feet, Dr. Sachs testified:

> Claimant's right foot and ankle examinations were normal, with full range of motion and strength, and no complaints of tenderness at the sites of the avulsion fractures noted in the x-ray studies. The left foot examination was positive for a complaint of tenderness about the left heel area, but that finding[] was not reproduced when Claimant was distracted, throwing doubt on the veracity of the complaint.

*Id.* The WCJ noted that Dr. Sachs concluded that all Claimant's work-related injuries had resolved as follows:

> Dr. Sachs found no objective abnormalities upon examination of Claimant's low back or lower extremities.

5

Dr. Sachs opined that Claimant sustained a right foot and ankle contusion, sprain and probable avulsion fracture – all of which had fully resolved. With regard to the left foot and ankle, the diagnoses were contusion and sprain, all of which had resolved. With regard to the back, Dr. Sachs conceded that the medical records did show some early treatment for a back sprain. At the time of the examination, Claimant had fully recovered from that injury as well.

*Id.*

Employer also submitted multiple surveillance DVDs that depicted Claimant walking, driving, and running errands at various times throughout 2016 and into early 2017. F.F. 7. Claimant neither limps nor wears the walker boot during the surveillance videos. *Id.* The WCJ determined the video was inconsistent with Claimant's claimed incapability to perform "any" activities and that Claimant finds even walking short distances very difficult. *Id.* Dr. Sachs testified that the admitted surveillance videos confirmed his conclusion that Claimant had fully recovered from his work-related injuries. F.F. 3.

To contest Employer's evidence, Claimant presented the testimony of Michael McCoy, M.D. F.F. 6. Dr. McCoy is a family practitioner who began treating Claimant in May 2016. *Id.* Dr. McCoy examined Claimant and diagnosed him with bilateral ankle strains and sprains, right ankle fracture, and lumbar strain and sprain, for which he prescribed Claimant a left ankle brace, physical therapy at Dr. McCoy's facility, and narcotic pain medication. *Id.* As of the last time he saw Claimant in December 2016, Dr. McCoy opined that Claimant was unable to return to his job as a truck driver for Employer at that time. *Id.*

Claimant also testified on his own behalf. F.F. 5. Claimant testified he was injured on January 15, 2016 in the course of his employment, discussed his treatment, and contested that he had fully recovered from his injuries. *Id.* Claimant

6

testified he has ongoing pain in his right foot and does not feel he is able to return to his pre-injury job with Employer. *Id.*

Regarding the Termination Petition, the WCJ made the following relevant determinations:

> a. Claimant is not credible with regard to his reporting of current symptoms or capabilities. I base this conclusion upon my own personal observations of Claimant during his testimony as well as my review of the surveillance video, which contradicted Claimant's testimony and his history provided to multiple medical providers.
>
> b. I find the testimony of Dr. Sachs to be more credible and persuasive than that of Dr. McCoy. I base this finding on several factors, including (1) Dr. Sachs' superior qualifications as an orthopedic surgeon, (2) Dr. McCoy relied on Claimant's allegations of pain and disability, which are not credible, and (3) the surveillance video is inconsistent with the conclusions reached by Dr. McCoy.

F.F. 8(a) & (b). Of course, the WCJ determines credibility and weight of evidence, and neither the Board nor this Court may overturn those determinations on appeal. *Koszowski*, 595 A.2d at 699; *see also Hawbaker v. Workers' Comp. Appeal Bd. (Kriner's Quality Roofing Servs. & Uninsured Employer Guar. Fund)*, 159 A.3d 61, 69 (Pa. Cmwlth.), *reargument denied* (Apr. 3), *appeal denied*, 173 A.3d 252 (Pa. 2017) ("Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations.").

As a result of the WCJ's credibility determinations, which we must accept, as did the Board,[6] we find that substantial record evidence supports the WCJ's findings of fact, specifically that Claimant had fully recovered from his

---

[6] *See* Board Opinion at 4.

7

January 15, 2016 work-related injury as of May 24, 2016. Therefore, the WCJ properly terminated Claimant's compensation benefits from May 24, 2016 onward. *See* WCJ Decision at 8 & Order. Further, despite Claimant's argument to the contrary, the Board found that Dr. Sachs' testimony addressed Claimant's entire work injury. *See* Board Opinion at 4-5. The Board explained:

> Dr. Sachs clearly opined that Claimant was fully recovered from the right ankle aspect of his work injury, including stating that there was "no clinical evidence at the time of my evaluation for residual posttraumatic abnormality to the right foot and ankle." He further opined that Claimant was recovered from "all work-related injuries." Thus, Dr. Sachs addressed the entire accepted injury and found Claimant was fully recovered.

Board Opinion at 4-5 (internal record citation omitted). We agree with the Board's assessment that Dr. Sachs' testimony, in its entirety, acknowledged and determined that Claimant had fully recovered from all aspects of his January 15, 2016 work-related injury. Consequently, the Board did not err in affirming the WCJ Decision regarding the Termination Petition.

**The UR Review Petitions**

Next, Claimant argues that the Board erred by affirming the WCJ's denial of the UR Review Petitions. *See* Claimant's Brief at 15-16. Claimant argues that treatment may be deemed reasonable and necessary even if it merely manages a claimant's symptoms. *Id.* Therefore, Claimant argues that because he testified that the treatments of Drs. Fagan and McCoy provide him with pain relief, the denial of the UR Review Petitions should be reversed. *Id.* at 16. We do not agree.

This Court has explained:

8

> It is accepted that, pursuant to Section 301(c) of the Act, an employer is only liable to pay for a claimant's medical expenses that arise from and are caused by a work-related injury. Although the burden is initially on the claimant to establish that the injury is work-related, once the employer acknowledges liability for the injury, the claimant is not required to continually establish that medical treatment of that compensable injury is causally related because the injury for which the claimant is treating has already been established. Accordingly, thereafter, the employer has the burden of proving that a medical expense is unreasonable, unnecessary, or is not related to the accepted work injury.

*Rogele, Inc. v. Workers' Comp. Appeal Bd. (Hall)*, 198 A.3d 1195, 1200 (Pa. Cmwlth. 2018) (internal citations, quotations, and brackets omitted). Additionally, the report of a Utilization Review Organization (URO) tasked with determining medical treatment is whether medical expenses are reasonable and necessary becomes part of the record before the WCJ. 34 Pa. Code § 127.556. While not bound by the URO report, the WCJ must consider it as evidence. *Id.*

Here, regarding the chiropractic treatment administered by Dr. Fagan, Employer submitted the URO report of Gregg J. Fisher, D.C. *See* R.R. at 3a-13a; F.F. 4(a). Dr. Fisher reviewed and noted that Dr. Fagan's records contained no detailed chiropractic history, no description of Dr. Fagan's examinations of Claimant, no documentation that the chiropractic treatment reviewed was beneficial to Claimant, and no documentation of progress. *Id.* Therefore, Dr. Fisher found all ongoing treatment of Claimant by Dr. Fagan from May 17, 2016 forward to be unreasonable and unnecessary. *Id.* In response, Claimant submitted a written statement of Dr. Fagan stating that the chiropractic treatment he was administering was helping Claimant and was adequately documented in his notes. R.R. at 14a; F.F. 4(a).

9

Likewise, regarding the treatment Claimant received from Dr. McCoy, Employer submitted the URO report of Lawrence Axelrod, M.D. *See* R.R. at 77a-101a; F.F. 4(b). Dr. Axelrod found all ongoing treatment by Dr. McCoy from August 3, 2016 forward to be unreasonable and unnecessary, with a particular focus on the amount of narcotic medications Dr. McCoy prescribed to Claimant without monitoring his prescription drug use.[7] *Id.* In rebuttal, Claimant again submitted a written response from Dr. McCoy stating that the treatment he provided was helping Claimant and that Claimant needed the continuing medication to treat his ongoing symptoms. R.R. at 144a-46a; F.F. 4(b).

The WCJ reviewed this evidence and made the following determination:

> c. I find the opinions of the two utilization reviewers under review, Dr. Lawrence Axelrod, and Dr. Gregory Fisher[], to be credible and I accept it [sic] as fact. Both experts are unbiased in this litigation, and received no compensation from either side for their opinions. Moreover, their opinions are corroborated by the testimony of Dr. Sachs and the surveillance footage.

F.F. 8(c). The Board accepted, as it must, the WCJ's credibility determination and concluded that the WCJ did not err by denying the UR Review Petitions based on the substantial evidence of the URO reports. Board Opinion at 6-7. We may not reweigh these determinations. *See Hawbaker*. As such, based upon our review of the record, we find that the Board did not err in affirming the WCJ Decision denying the UR Review Petitions.

---

[7] Dr. McCoy testified that he prescribed Claimant 60 to 90 Oxycodone tablets a month, which prescription continued even after the Utilization Review without either monitoring by Dr. McCoy or a firm plan to wean Claimant from the narcotics in the future. *See* F.F. 6.

10

## Claimant's Remand Request

Finally, Claimant argues this Court should remand this matter to allow him to submit, and the WCJ to consider, evidence regarding the left ankle surgery Claimant underwent following the close of the record in this matter. *See* Claimant's Brief at 13-14. We disagree.

Regarding his left ankle surgery, Claimant testified at the March 16, 2017 hearing in this matter as follows:

> Q. You mentioned you had a [left ankle] surgery scheduled. When was the surgery scheduled?
>
> A. I was scheduled for the 13th of January [2017].
>
> Q. Did that go forward?
>
> A. No.
>
> Q. Why not?
>
> A. They wouldn't pay for it.
>
> Q. Have you rescheduled that surgery?
>
> A. Yes, sir.
>
> Q. When is it rescheduled?
>
> A. April the 7th [of 2017].

Notes of Testimony, March 16, 2017 (N.T.), at 13-14; R.R. 160a-61a. At the conclusion of the hearing, the WCJ closed the record. N.T. at 24; R.R. 171a. Three weeks later, on April 7, 2017, Claimant underwent the left ankle surgery.[8]

---

[8] Employer does not deny Claimant underwent a left ankle surgery on April 7, 2017. *See* Employer's Brief at 14.

11

Claimant argues that this Court should remand the matter with a direction to the WCJ to (1) reopen the record to allow the entry of evidence regarding the April 2017 left ankle surgery and then (2) reweigh the evidence, presumably to determine both the Termination and the UR Review Petitions. *See* Claimant's Brief at 13-14. Claimant alleges his testimony established that the evidence before the WCJ at the time she issued the WCJ Decision was that the prospective surgery on Claimant's left ankle had been cancelled because of insurance issues. *Id.* at 14.

Employer takes the position that there is no need to remand the matter. *See* Employer's Brief at 13-16. Contrary to Claimant's suggestion, Employer argues that the testimony actually revealed that Claimant testified that he had a surgery scheduled in April 2017. *Id.* at 14-15. Thus, Employer argues that, even with the understanding that Claimant had a surgery scheduled in the near future, the WCJ still granted the Termination Petition and denied the UR Review Petitions. *Id.* at 15-16. The actual occurrence of the surgery after the hearing in this matter was not, Employer argues, "new evidence," and admitting evidence about the surgery would do nothing more than confirm the evidence already in the record that Claimant and his medical professionals alleged he required continued treatment, including surgery. *Id.* at 15.

"A WCJ has the discretion to reopen the record once closed." *Pryor v. Workers' Comp. Appeal Bd. (Colin Serv. Sys.)*, 923 A.2d 1197, 1201–02 (Pa. Cmwlth. 2006). A WCJ's reopening of or failure to reopen a record will not be reversed absent an abuse of discretion. *Hammerle v. Workmen's Comp. Appeal Bd. (Dep't of Agric., Bureau of Dog Law Enf't)*, 490 A.2d 494, 497 (Pa. Cmwlth. 1985). Additionally, "the grant or denial of a rehearing is left to the discretion of the Board and this [C]ourt will not disturb that decision absent a clear abuse of discretion."

*Paxos v. Workmen's Comp. Appeal Bd. (Frankford-Quaker Grocery)*, 631 A.2d 826, 831 (Pa. Cmwlth. 1993). "In deciding whether or not to grant a rehearing based on after-discovered evidence, the Board has broad powers to grant a rehearing when justice requires." *Id.* However, this Court has further explained:

> [t]he purpose of granting rehearing in workmen's compensation cases is to allow a party to present newly-discovered, noncumulative evidence, and will not be granted to permit the party to strengthen weak proofs already presented. Thus, a rehearing petition may be denied where the proposed after-discovered evidence is cumulative.

*Id.* (internal citation omitted).

The WCJ heard testimony, prior to issuing her decision, that Claimant had a surgery scheduled.[9] *See* N.T. at 12-14; R.R. at 159a-61a. Therefore, conducting a rehearing[10] to admit evidence illustrating the occurrence of Claimant's April 7, 2017 surgery would serve the purpose of merely admitting cumulative evidence to strengthen Claimant's assertion that surgery was needed, a point already presented by his testimony that the surgery was scheduled. *See Paxos*. Accordingly, because the proffered evidence is cumulative, we find no error in the WCJ's

---

[9] We note that, in the instant matter, despite having the surgery scheduled at the time of the hearing, Claimant agreed to the close of the record on March 16, 2017. N.T. at 24; R.R. 171a. At no point in the nearly four months between Claimant's April 7, 2017 surgery and the issuance of the WCJ Decision on August 4, 2017 did Claimant request that the WCJ reopen the record to admit evidence regarding his surgery.

[10] To the extent Claimant requested that the Board grant a rehearing, we note that, in his Appeal to the Board challenging the WCJ Decision, Claimant alleged that "[t]he [WCJ's] finding that [] Claimant's ankle injuries have resolved should be remanded[] because he underwent ankle surgery after the record closed." Claimant's On-Line Appeal dated August 23, 2017.

13

determinations or the Board's refusal to grant a rehearing on the matter based on Claimant's April 2017 surgery, and no reason to remand the matter as requested.

For the reasons stated above, the Board's order is affirmed.


_____
CHRISTINE FIZZANO CANNON, Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Naftale Green,                                  :
               Petitioner                   :
                                         :
        v.                                  :
                                         :
Workers' Compensation Appeal              :
Board (The Salvation Army),                :   No. 1259 C.D. 2018
               Respondent                  :

## O R D E R

AND NOW, this 23rd day of July, 2019, the August 16, 2018 order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge